CITY OF JACKSON v. COMMISSIONER OF REVENUE.
BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 2,
WARREN TOWNSHIP, MACOMB COUNTY v. SAME.
BOARD OF EDUCATION OF CITY OF DETROIT v. SAME.
CITY OF DETROIT v. SAME.

1. CONSTITUTIONAL LAW—AMENDMENT—DIVISION OF REVENUES—IN-
    TEREST OF LOCAL GOVERNMENTAL UNITS.
    Under amendment to the Constitution, directing return of a por-
    tion of certain revenues to enumerated local governmental
    units, the financial interest of such units began as of the date
    the amendment became effective (Const. 1908, art. 10, § 23,
    as added in 1946).

2. SAME—AMENDMENT—CONTENTS OF INITIATORY PETITIONS.
    Initiatory petition upon which was printed the full text of a
    section proposed to be added to the Constitution, which sec-
    tion did not seek to re-enact the provisions of a statute, there-
    tofore enacted, and thus to include it within the amendment,
    was not insufficient because of failure to include such statute
    (Const. 1908, art. 10, § 23, as added in 1946; art. 17, § 2, as
    amended in 1941).

3. SAME—AMENDMENT—PROVISIONS PUBLISHED.

In case a proposed constitutional provision amends or replaces a specific provision of the Constitution, such provision should be published along with the proposed amendment but other provisions which are still operative though possibly in need of construction in conjunction with the amending provision need not necessarily be published (Const. 1908, art. 17, § 3, as amended in 1941).

4. SAME—AMENDMENT—STATEMENT OF PURPOSE.

Purpose of proposed amendment of Constitution relative to return of certain revenue to local governmental units *held*, to have been fairly stated, considering limitation to 100 words, and not to' contain omissions or defects likely to mislead voters to such extent as to require setting amendment aside for misleading statement of purpose (Const. 1908, art. 10, § 23, as added in 1946).

5. SAME—AMENDMENT—INITIATIVE.

The State Constitution does not' contain a limitation to the effect that what might otherwise be considered as legislation may not be initiated by petition as an amendment to the Constitution (Const. 1908, art. 17, §§ 1–3, as amended in 1941).

6. SAME—AMENDMENT—INITIATIVE—LEGISLATION.

Claim that amendment to Constitution by which part of certain revenues were ordered returned to enumerated local units of government was invalid because proposal so to amend should have been initiated as legislation *held*, without merit where raised after amendment had been voted on by the electors (Const. 1908, art. 10, § 23, as added in 1946).

7. SAME—DISTRIBUTION OF POWERS—CHANGE OF DISTRIBUTION BY PEOPLE.

The people have an inherent right so to amend the Constitution as to take away from, or add to, the powers of either department of the government.

8. SAME—AMENDMENT—DIVISION OF REVENUE WITH LOCAL GOVERNMENTAL UNITS—IMPAIRMENT OF CONTRACTS.

Claims that amendment to Constitution by which part of certain revenues were ordered returned to enumerated local units of government resulted in impairing the obligation of contracts entered into by the State, presumably meaning those contracts for the expenditure of funds appropriated by the legislature in reliance on the continuance of such revenues, that the

amendment contains proposals for more than one purpose and that it is an ineffectual attempt to revise the Constitution *held,* without merit, when raised after adoption of such amendment (Const. 1908, art. 10, § 23, as added in 1946).

9. Same—Amendment—Submission of Proposal.

Alleged defects in initiative petitions and manner of submitting proposed amendment to Constitution whereby a portion of certain revenues were ordered returned to enumerated local governmental units *held,* not of such extent as to require declaration that action taken was a nullity, where to do so would thwart the will of the voters and such objection might have been raised before submission of the amendment to the voters (Const. 1908, art. 10, § 23, as added in 1946).

10. Mandamus—Initiative—Constitutional Law.

Mandamus will issue to prevent submission of a constitutional amendment, proposed by the initiative, when compliance with the requirements of the Constitution is lacking (Const. 1908, art. 5, § 1, as amended in 1941).

11. Officers — Ministerial Duty — Mandamus — Constitutional Law.

The duty of certain State officers to determine whether or not a petition initiating an amendment of the Constitution is in proper form is ministerial, involves solely the determination of a question of fact and presents a clear legal duty, obedience to which the Supreme Court will compel by mandamus (Const. 1908, art. 5, § 1, as amended in 1941).

12. Constitutional Law—Amendment—Statutes.

The Constitution cannot be amended or superseded by legislation.

13. Same—Amendment—Officers—Statutes.

Amendment of Constitution, proposed by initiative petition and submitted to the voters, is not thereafter declared a nullity, where it appears that in the matter of submission to the voters the secretary of State performed his constitutional duties although record may not show that he and certain other State officers, constituting a special statutory board, functioned in accordance with such statute (Const. 1908, art. 10, § 23, as added in 1946; art. 17, §§ 1–3, as amended in 1941; Act No. 246, Pub. Acts 1941).

14. Elections—Construction of Statutes.

After an election, statutes giving directions as to the mode and manner of conducting elections will be construed by the courts

as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result or affect an essential element of the election.

·15. Same—Construction of Statutes—Direct Proceedings to Enforce Compliance.

Before an election a statute giving directions as to the mode and manner of conducting elections is considered as mandatory if direct proceedings for its enforcement are brought.

16. Constitutional Law—Amendment—Submission of Proposals.

While the procedure prescribed by the Constitution for proposals to amend it must be duly followed and none of the requisites may be omitted, yet unless the courts are satisfied that the Constitution has been violated in the submission of a proposed amendment, they should uphold it.

17. Same—Power.

Constitutional provisions derive their force, not from the legislature, but from the people in whom the power is inherent.

18. Same—Power to Change—Federal Constitution.

The power of the people of a State to make changes in the State Constitution is practically without limit except as to the limitations contained in the Federal Constitution, when the proposals for change are made in the prescribed manner.

19. Same—Validity of Amendment—Presumptions.

In passing upon the validity of proceedings for the adoption of an amendment of the Constitution, the question presented is, not whether it is possible to condemn, but whether it is possible to uphold, and every reasonable presumption, both of law and fact, is to be indulged in favor of the legality of an amendment.

20. Same—Amendment—Courts.

Courts should, after an amendment of the Constitution has been adopted, be slow to declare the amendment unconstitutional on technical grounds unless the substantial requirements of the Constitution have been violated in the submission.

21. Same—Self-Executing Amendment—Mandamus.

Insofar as amendment of the Constitution requires return of one cent of State sales tax levy on each dollar of sales of tangible personal property, 50 per cent. to school districts and 50 per cent. to cities, townships and villages according to population, all remittances to be on a quarterly basis, the amendment is self-executing and the distributing officials subject to mandamus to compel such action (Const. 1908, art. 10, § 23, as added in 1946).

22. Same—Legislature—Appropriation for School Districts—Courts.

While it may be presumed that the legislature will obey the mandate of the Constitution to make an appropriation of at least a stated minimum amount for school districts, it is not within the power or province of the Court to order the legislature to do so (Const. 1908, art. 10, § 23, as added in 1946).

23. Same—Ambiguities—Construction.

When a provision of. a Constitution is ambiguous, it becomes the duty of the court to construe such provision in the light of established rules of construction of constitutional provisions.

24. Same—Purpose of Construction—Intent.

The object of construing a written Constitution is to ascertain and give effect to the intent of the people in adopting it.

25. Same—Construction.

In construing constitutional provisions where the meaning may be questioned, the court should have regard to the circumstances leading to their adoption and the purpose sought to be accomplished.

26. Same—Construction—General Purpose—Words and Phrases.

In construing an amendment of the Constitution, a court must have in mind the general purpose and consider that words of like import used in all parts of the amendment are intended to have a similar meaning.

27. Same—Construction—Sales Tax Levy.

"Sales tax levy," as that term is used in amendment of Constitution providing for distribution of one cent thereof to enumerated local governmental units is construed as referring to sales tax money collected since it would be impossible to ascertain with accuracy the amount of the "levy," as not all of the "levy" is collected (Const. 1908, art. 10, § 23, as added in 1946).

28. Same—Construction—Sales Tax Levy.

"One cent of a State sales tax levy," as used in amendment of Constitution, providing for distribution of such portion to enumerated local governmental units, is construed without consideration of such items as expenses of collection, refunds, appropriations made therefrom, license fees and penalties arising from enforcement of the law (Const. 1908, art. 10, § 23, as added in 1946).

29. SAME—CONSTRUCTION—SALES TAX REVENUES.

In construing term "total sales tax revenues" in latter part of amendment to the Constitution requiring appropriation of a portion of such revenues for school districts, all revenues, including license fees, interest and penalties are included since all sales tax revenues and collections become State funds under the sales tax law and continue to be such until paid out according to law (Const. 1908, art. 10, § 23, as added in 1946; Act No. 167, Pub. Acts 1933, as amended).

30. SAME—CONSTRUCTION—SELF-EXECUTING PROVISION FOR DISTRIBUTION OF FUNDS—ACCOUNTING.

Insofar as amendment of State Constitution for distribution of one cent of sales tax levy to enumerated local governmental units is self-executing, such units are entitled to an accounting of their respective shares as of the time the amendment became effective (Const. 1908, art. 10, § 23, as added in 1946).

31. SAME—CONSTRUCTION—FISCAL YEAR.

The terms "year," "annual" grants, "fiscal year," as used in amendment of Constitution ordering distribution of a part of a certain fund to enumerated local governmental units, are construed as meaning, wherever possible, the fiscal year of the State government, frcm July 1st to the succeeding June 30th, inclusive (Const. 1908, art. 10, § 23, as added in 1946).

32. SAME—CONSTRUCTION—LEGISLATIVE GRANTS.

The term "legislative grants in" a fiscal year, as used in amendment of the Constitution ordering distribution of a part of the total sales tax revenues to enumerated local governmental units, is construed as intending the appropriations made for the year indicated and not merely the fiscal year "in" which they may have been made (Const. 1908, art. 10, § 23, as added in 1946).

33. MANDAMUS—LEGISLATURE—TAX COLLECTING AUTHORITY.

Since mandatory, but not self-executing so-called formula, contained in latter portion of amendment to the Constitution relative to distribution of sales tax revenues, and prescribing ratio of annual grants to revenues of the preceding year, calls for legislative action, the Supreme Court declines to order the tax collecting authority to execute the formula (Const. 1908, art. 10, § 23, as added in 1946).

34. Costs—Construction of Constitution.

> No costs are awarded in mandamus proceeding by various local governmental units against State tax collecting officers where construction of an amendment of the Constitution is involved (Const. 1908, art. 10, § 23, as added in 1946).

Separate actions of mandamus by City of Jackson, Board of Education of School District No. 2, Warren Township, Macomb County, Board of Education of the City of Detroit and City of Detroit against Louis M. Nims, Commissioner of Revenue, and others to compel distribution of sales tax revenues in accordance with the newly adopted amendment, being article 10, § 23 of the Constitution. Union School District of Jackson intervenes. Submitted March 27, 1947. (Calendar Nos. 43,699, 43,700, 43,708, 43,709). Writs granted April 8, 1947.

*Alvin G. Dahlem,* City Attorney, for City of Jackson.

*Roscoe O. Bonisteel (Foss O. Eldred,* of counsel), for Board of Education of School District No. 2.

*Clarence E. Page,* for Board of Education of City of Detroit.

*William E. Dowling,* Corporation Counsel, and *John H. Witherspoon* and *Helen W. Miller,* Assistant Corporation Counsel, for City of Detroit.

*Kleinstiver & Anderson,* for intervenor Union School District of Jackson.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *John A. Bradshaw,* Deputy Attorney General, and *Peter E. Bradt, Daniel J. O'Hara,* and *Elbern Parsons,* Assistants Attorney General, for the defendants.

*Amici Curiae:*

*Walter G. Krapohl,* City Attorney of Flint.

*John T. Damm,* Assistant City Attorney of Flint.

*Guy W. Selby,* attorney for the Board of Education of Flint.

*Orph C. Holmes,* City Attorney of Ferndale.

*Dale H. Fillmore,* Corporation Counsel of Dearborn.

*Lionel R. Hampton,* Assistant Corporation Counsel of Dearborn.

*John J. Fish,* Attorney for Dearborn Board of Education.

*F. Roland Allaben,* City Attorney of Grand Rapids and attorney for Board of Education of Grand Rapids.

BOYLES, J.   These cases involve the question whether the amendment to the State Constitution designated as section 23 of article 10 was legally submitted to and adopted by the voters at the general election held November 5, 1946; if so, whether, or at least to what extent, the same is self-executing; and also involves certain other questions regarding construction of the amendment.

It is conceded that the following amendment to the State Constitution was submitted to the voters at said election and adopted by affirmative vote:

"SEC. 23.   There shall be returned to local governmental units and school districts by the method

hereinafter set forth, one cent of a State sales tax levy on each dollar of sales of tangible personal property on the present statutory base (not rate). The State tax collecting authority shall divide the entire said sum without deduction and remit fifty per cent. thereof among the school districts on the basis of the school census on which primary school money is distributed for that fiscal year. The balance of fifty per cent. shall be returned to counties as a whole on a population basis and payment shall be made to the county treasurer who shall remit to the respective cities, townships and villages within the county on a per capita basis. Population computation shall be based on the last State-wide Federal census for purposes of division among counties and upon the same basis or upon any special Federal county-wide census, whichever is later, for intra-county division purposes. All remittances provided shall be made on a quarterly basis. The legislature shall hereafter make annual grants to school districts out of general funds, over and above all constitutional allocations heretofore and herein provided, in at least amounts which bear the same ratio to total State sales tax revenues of the preceding year which the legislative grants in the fiscal year 1945–1946 bore to said revenues of the preceding year.''

The said amendment, if legally submitted and adopted, became a part of the fundamental law of the State December 5, 1946. Constitution (1908), art. 17, § 2, as amended in 1941. The direct financial interest, if any, of plaintiffs herein and other local governmental units and school districts, in sales tax collections, begins as of that date. Thereafter differences of opinion developed as to whether the amendment had been legally submitted and adopted, as to whether it is self-executing, or whether it must be implemented by legislation in order to function.

Several municipalities and school districts, claiming that the amendment was self-executing without the necessity for legislative action, demanded of the commissioner of revenue, the auditor general and the State treasurer as the sales tax collecting authority that they proceed to a distribution of one cent of the sales tax collected on each dollar of sales of tangible personal property in accordance with the amendment. These officials, expressing doubts as to their duties in the matter, refused to comply, until there had been judicial interpretation of the amendment.

Thereupon the city of Jackson and the city of Detroit filed separate petitions in this Court for mandamus to compel said officials, as the State sales tax collecting authority, to proceed to distribute to the county treasurers of the respective counties the 50 per cent. of the one cent of the sales tax levy collected on each dollar of sales of tangible personal property, which the amendment required to be returned to the counties, for payment to said plaintiff cities and other local government units on a per capita basis. The boards of education of the city of Detroit and of school district No. 2, Warren township, Macomb county, also filed separate petitions in this Court seeking to compel the defendants herein to return to them their proportionate shares of one half of one cent of all such sales tax collected on each dollar of sales of tangible personal property, beginning December 5, 1946, to December 31, 1946; and also to remit to them their proportionate shares thereafter, following the close of each quarter of the State's fiscal year. The petitions of these school districts further asked that the defendants herein be required to pay from the general funds of the State their proportionate shares of the moneys to be paid to school districts accord-

ing to the ratio set forth in the concluding sentence of the amendment.

On receiving and filing the foregoing petitions the Court issued orders directing the defendants to show cause why the petitions should not be granted. Separate returns have been made, briefs filed, and these matters consolidated for the purpose of hearing arguments and for decision. The attorney general, on behalf of the defendants, has filed a brief in answer to the claims of the four petitioners, wherein it is insisted that the amendment is a nullity because of fatal defects in the petitions for its submission and in the manner in which the proposal was published and submitted; and that the amendment is not self-executing but requires implementation by legislative action.

Obviously the claim of the defendants that there were fatal defects in the petitions and manner of submission of the amendment to the voters goes to the merits of the entire matter and applies equally to the demands both of the cities and those of the school districts. This provides a proper occasion for consolidation of these matters and for that purpose the attorney general has filed a consolidated brief in support of the claims thus made by the defendants.

Defendants claim that the petitions for submission of the proposed amendment to the voters were defective in that they did not include the full text thereof, as required by article 17, § 2, of the State Constitution, as amended in 1941. Such claim is not supported by the facts, which are to the contrary. The requirement of article 17, § 2, is that:

"Every such petition shall include the full text of the amendment so proposed."

The proposed amendment (article 10, § 23) was printed in full on the petitions. However, the de-

fendants claim that this does not fully satisfy the constitutional requirement. The attorney general argues that the sales tax act should have been put into the amendment as a part of the "full text," and should have been included in the petitions and published as a part of the proposed amendment, and relies on *Scott* v. *Secretary of State,* 202 Mich. 629. In that case petitions were filed with the secretary of State to amend the Constitution so as to permit the manufacture and sale of wines, cider, beer, et cetera, contrary to the prohibition thereof then in effect. The amendments there proposed, as set up in the petitions, provided, among other things, that:

"Act No. 313, Public Acts of 1887, as amended and in force May 1, 1916, shall be in force and effect except as herein (article 16) modified."

Act No. 313, thus referred to, had been repealed *in toto*. Thus it was sought to reinstate the act, through the medium of the amendments and as a part of the Constitution, without setting out in the petitions the full text thus to be reinstated. Before the proposition was submitted to the voters a petition was filed in this Court to compel the secretary of State to refrain from publishing the proposed amendments or submitting them to the voters. There was no dispute as to the fact that the petitions and the amendments as set up therein sought to reinstate the former Act No. 313 by reference only, and that it was to be thus included as a part of the amendments. The Court held that the constitutional requirement that the petitions contain the full text of the amendments had not been met, and directed the secretary of State to reject the petitions. The distinction between the *Scott Case* and the instant situation is plain. We do not here have an attempt to reenact the provisions of the sales tax law and thus to include it in the amend-

ment here under consideration, and the claim of insufficiency of the petitions on this ground is without merit.

Companion to the above objection raised by the defendants, it is argued by the attorney general that the proposal was not published in full "with any existing provisions of the Constitution which would be altered or abrogated thereby," as required by the State Constitution (1908), art. 17, § 3, as amended in 1941. In that connection the attorney general lists some 14 sections of the Constitution which it is claimed should have been published in full, as follows: Article 4, § 1, "the powers of government are divided into three departments: The legislative, executive and judicial;" article 5, §§ 13, 24, referring (1) to meetings and adjournments of the legislature, and (2) to appropriations by the legislature of public money for local or private purposes; article 6, § 2, which vests the chief executive power in the governor; article 8, § 20, whereby the legislature shall provide by general laws for incorporation of cities and villages; six sections of article 10 referring to legislative duties to provide taxes for State government, the granting of State credit, internal improvements and payments of money from the State treasury "in pursuance of appropriations made by law;" also various sections of article 11 referring to education, maintenance of primary schools, the university, and various colleges and other institutions. None of the above provisions of the Constitution would be "altered or abrogated" by the amendment here under consideration, as these terms have been construed by the court. This Court has plainly indicated the rule as to the provisions which must be published in full, in *School*

*District of City of Pontiac* v. *City of Pontiac,* 262 Mich. 338, 343, 344:

"The exact objection urged is that this amendment alters or abrogates some 16 or 18 other provisions of the Constitution, and that failure to publish the 'existing provisions of the Constitution which would be altered or abrogated' nullifies the attempted amendment. Some of the provisions as to which this argument is urged are: Article 8, §§ 20, 22–24, 26.; article 10, §§ 1–3, 5, 10; article 11, §§ 9, 10, 14; article 15, § 2. We think this position is not tenable. The duty of submitting all proposed constitutional amendments initiated by the people is placed by the Constitution upon the secretary of State, article 17, § 2. Any provision as to such duty should, if possible, be so construed as to make the requisite course of conduct entirely clear and plain. Perplexities and uncertainties will be pitfalls for the officer charged with this duty regardless of a zealous and honest effort to fully comply with the law, and the officer's nonperformance might jeopardize and possibly nullify the effort of electors to amend the Constitution. The instant case affords an apt illustration of such difficulties. Here able counsel disagree which, if any, of the other 16 or 18 constitutional provisions are altered by the amendment. It may almost be said that no two agree that certain of these provisions are altered and others are not. How then could the secretary of State determine or be advised with any degree of certainty which of these other provisions of the Constitution he should publish? As hereinafter noted a more clear and definite meaning than that asserted by appellants must be given to the constitutional provision last above quoted. * * *

"We think the requirement in substance is this: That in case a proposed constitutional provision amends or replaces ('alters or abrogates') a specific

provision of the Constitution, that such provision should be published along with the proposed amendment; that other provisions which are still operative, though possibly they may need thereafter to be construed in conjunction with the amending provision, need not necessarily be published."

In *DeMaggio* v. *Attorney General,* 300 Mich. 251, 256, 257, the Court said:

"It is to be noted that the Michigan Constitution, article 17, § 3, requires all proposed amendments to be published in full 'with any existing provisions of the Constitution which would be altered or abrogated thereby.' In the case at bar there were no provisions of the Constitution published when the civil service amendment was voted upon. The civil service amendment does not alter or abrogate any specific provision of the Constitution and hence there was none to be published."

See, also, *Civil Service Commission* v. *Auditor General,* 302 Mich. 673.

Defendants claim that the purpose of the proposed amendment as stated on the ballots did not comply with the requirement in article 17, § 3, of the Constitution, as amended in 1941, which provides:

"The purpose of any such proposed amendment or question shall be designated on the ballots for submission to the electors in not more than 100 words, exclusive of caption. Such designation and caption shall be prepared by the secretary of State or by such other authority as shall be hereafter designated by law within 10 days after the filing of any proposal and shall consist of a true and impartial statement of the purpose of the amendment or question in such language as shall create no prejudice for or against such proposal."

The caption and purpose of this proposed amendment were designated on the ballots as follows:

"No. 2   By initiatory petition there is submitted a proposed amendment to article 10 of the Constitution by adding a new section to be known as number 23 to provide for the return of one cent of the State sales tax to be divided among cities, villages, townships and schools, and to provide for the continuance of annual school grants.

"Shall one cent of a levy on each dollar of sales under a State sales tax on the present base be returned to cities, villages, townships and school districts; half apportioned per capita among cities, villages and townships according to county populations, and half apportioned to school districts on basis of the primary school census; and in addition annual grants be made school districts from general funds in ratio to sales tax revenues of preceding fiscal years but not less than that borne between such grants in fiscal year ending nineteen hundred forty-six and the preceding year's such revenues?"

Doubtless it can be said that whether the foregoing is "a true and impartial statement of the purpose of the amendment or question in such language as shall create no prejudice for or against such proposal" is a matter of opinion.   We consider that the purpose of this rather complicated amendment was fairly stated, considering its limitation to 100 words, and we find no omission or defects in the statement of purpose which would be likely to mislead the voter, to such extent that the adoption of the amendment should now be set aside for that reason.

The defendants contend that the amendment here under consideration is an attempt to initiate legislation under the guise of an amendment to the Constitution.   Section 1 of article 17 of the Constitution

provides that amendments to the Constitution may be proposed in the senate or house of representatives. Section 2 of article 17, as amended in 1941, provides:

"Amendments may also be proposed to this Constitution by petition of the qualified and registered electors of this State."

This section, with the succeeding section 3, sets up in considerable detail the requirements for submission of amendments initiated by petition. Nowhere in these provisions or elsewhere in the Constitution do we find any limitation to the effect that what might otherwise be considered as legislation cannot be initiated by petition, under said sections, as an amendment to the Constitution. As applied to this amendment, the line of demarcation between legislation and constitutional provision is too indefinite to require that an arbitrary decision must be made in advance of submitting a proposal to the voters, as to whether the proposal must be initiated as legislation under article 5, § 1, or as an amendment to the Constitution under article 17, § 2, as amended in 1941. In the present situation, the proposal has been adopted by the voters as an amendment to the Constitution. There is no merit in the claim that it must now be set aside on the ground that the proposal should have been initiated as legislation.

"The people have an inherent right to so amend the Constitution as to take away from, or add to, the powers of either department of the government." *People* v. *Cook* (syllabus), 147 Mich. 127.

The defendants contend that the adoption of this amendment results in impairing the obligation of contracts entered into by the State, presumably meaning those contracts for the expenditure of funds appropriated by the legislature relying on

continuing sales tax collections. Defendants also claim that the amendment is void because it contains proposals for more than one purpose; and that it is an ineffectual attempt to revise the Constitution. The claims are without merit. We have carefully considered all of the objections raised as to the legality of the petitions and the manner in which this amendment has been submitted to the people. We find no defects in the petitions or in the manner of submitting the proposed amendment, to such extent that the amendment must now be declared a nullity. In that regard we are not unmindful of the fact that to now declare the amendment a nullity would thwart the expressed will of the voters. We also are conscious of the fact that these objections might have been raised in advance of the submission, as was done in *Leininger* v. *Secretary of State, ante,* 644, decided March 3d. In that case we found that the initiative petition was fatally defective and directed the secretary of State, the State board of canvassers and the attorney general to refrain from submitting the proposal to the voters.

The defendants now argue in the instant case that the board of State canvassers and the attorney general failed to carry out the functions imposed upon them by the Constitution and by Act No. 246, Pub. Acts 1941 (Comp. Laws Supp. 1945, §§ 3285-1—3285-14, Stat. Ann. 1946 Cum. Supp. §§ 6.685 [1] –6.685 [14]), and for that reason the amendment must be declared a nullity. In article 17, § 2, as amended, it is provided that:

"Petitions * * * proposing an amendment to this Constitution shall be filed with the secretary of State or such other person or persons hereafter authorized by law to receive same. * * * Upon receipt of said petition the secretary of State or other person or persons hereafter authorized by law

shall canvass the same. * * * If the secretary of State or other person or persons hereafter authorized by law to receive and canvass same determines the petition is legal and in proper form, * * * the proposed amendment shall be ·submitted to the electors. * * * An official declaration of the sufficiency or insufficiency of the petition shall be made by the secretary of State or such other person or persons as shall hereafter be authorized at least two months prior to such election. * * * The secretary of State or such other person or persons as may be hereafter authorized by law shall submit all proposed amendments to the Constitution initiated by the people for adoption or rejection in compliance herewith. The petition shall consist of sheets in such form and having printed or written at the top thereof such heading as shall be designated or prescribed by the secretary of State, or such other person or persons hereafter authorized by law to receive, canvass and check the same.''

The secretary of State, over his signature as such official, sent to the various boards of county election commissioners a short form official ballot to be used in voting on the proposed constitutional amendment, together with the following notice:

''Inclosed you will find the short form of ballot as prepared by the board of State canvassers and the attorney general, under the provisions of article 17, § 3, of the Constitution, as amended, and of Act No. 246, § 4, Pub. Acts 1941.''

At the same time, the secretary of State sent notices·to·the various county clerks that the proposed amendment would be submitted to the electors at the general election November 5th, and also at the same time officially certified ''that the foregoing is a true and compared copy of a petition, except signatures, properly presented, signed and filed in my

office, requesting the submission to the electors of a proposed amendment to article 10 of the Constitution of the State by adding to said article a new section to be known as section 23, and further that I have canvassed and found same sufficient, agreeable to the requirements of section 2, article 17, of the Constitution of the State."

The attorney general points to Act No. 246, Pub. Acts 1941 (Comp. Laws Supp. 1945, §§ 3285–1— 3285–14, Stat. Ann. 1946 Cum. Supp. §§ 6.685 [1]– 6.685 [14]), and claims that the amendment was not properly submitted, and therefore a nullity, on the ground that said act does not authorize the secretary of State to perform the acts as authorized by sections 2 and 3 of article 17, but that the sole power to determine the sufficiency of the petitions, and to make an official determination, rests with the attorney general and a board consisting of the State officials who comprise the board of State canvassers (secretary of State, State treasurer and superintendent of public instruction [1 Comp. Laws 1929, § 3181 (Stat. Ann. § 6.470)]). The attorney general bases this contention on the provisions of Act No. 246, Pub. Acts 1941, *supra*.

This act was passed in 1941 to supplement, or perhaps implement, the amendments to sections 2 and 3 of article 17, which were ratified by the voters at the general election April 7, 1941. Section 4 of this act provides (among other things) that wherever the phrase "secretary of State, or such other person or persons as may hereafter be authorized by law" is used in sections 2 and 3 of article 17, it shall be considered to mean and have reference to a board composed of the above-named State officers and the attorney general, "and such board shall exercise the duties prescribed in such constitutional provisions." Obviously this provision in section 4

of said act cannot be given its full and literal meaning, inasmuch as the act itself provides that the petitions shall be filed with the secretary of State, copies of the statement of purpose shall be sent for publication by the secretary of State, the secretary of State shall certify the proposed amendment to the clerk of each county. The act does not indicate what records, if any, must be kept or maintained by the board which it creates. Apparently the meeting or functioning of said board is informal. In the instant case there is an absence of any satisfactory record before us as to the extent to which the board functioned, if at all, except as referred to in the notice sent by the secretary of State to the various county boards of election commissioners, hereinbefore quoted. On the other hand the records before us fail to show affirmatively that the provisions of said Act No. 246 were followed. Is it required that the adoption of the amendment here under consideration be vitiated, and the amendment be declared a nullity? The attorney general refers to *Leininger* v. *Secretary of State, supra,* and insists that we have answered the above question in the affirmative. But there are several controlling distinctions between the situation here before us, and the circumstances in the *Leininger Case.* In that case mandamus was sought, before the proposal was submitted to the voters, to prevent its submission, on the ground that the petitions were fatally defective. The Court so held, and the proposed legislation was not submitted for that reason. In the case at bar, wherein an amendment to the Constitution is under attack after its adoption, we find (as hereinbefore indicated) that there were no fatal defects in the petitions or in the manner of submission. The question in the *Leininger Case* was, as stated in the opinion, "whether the petition, in form, meets

the constitutional requirements so as to qualify it for transmittal to the legislature and submission to the people.''  The Court said (pp. 654–656):

"From the language of the *Thompson*[1], *Scott*[2] and *Hamilton*[3] *Cases* the distinction to be made is clear.  While the constitutionality of a proposed law is not determined by this Court before enactment, nonetheless, we do determine, in cases properly presented here before submission of the proposed law to the people, whether the constitutional requirements for such submission have been met, and mandamus will issue to prevent such submission when compliance therewith is lacking.  *  *  *

"Defendants insist that no duty reposes upon them to determine whether the petition meets the constitutional requirements for submission to the people, except as relates to signatures.  This contention is answered in the language of the *Scott Case, supra*.  Since the opinion in that case was written, article 5, § 1 of the Constitution has been amended (1941).  As will be noted from a reading of the quotation hereinbefore made therefrom, the section now imposes an express duty upon the defendants to determine that the petition is in proper form.  Thus the Constitution now makes express the duty which this Court had theretofore held rested upon the secretary of State.  The duty is still ministerial, involves solely the determination of a question of fact and represents a clear legal duty, obedience to which this Court will compel by mandamus.''

The distinction is plain.  In that case it was held that it was the duty of the secretary of State, the attorney general, and the board as named in Act No. 246, Pub. Acts 1941, to determine that the petitions did not meet the constitutional requirements.

[1] 192 Mich. 512.—REPORTER.

[2] 202 Mich. 629.—REPORTER.

[3] 212 Mich. 31.—REPORTER.

Sections 2 and 3 of article 17, as amended in 1941, as well as Act No. 246, impose a duty on all of the above-named officials. Sections 2 and 3 of article 17 were not superseded by Act No. 246, Pub. Acts 1941, nor could they be. The Constitution cannot be amended or superseded by legislation. We are not here deciding a case where there is a fatal defect in the petitions, as a result of which the proposition should be withheld from submission to the voters. Such were the situations in the *Scott* and *Leininger Cases, supra.* Here we have a situation where we find there were no such fatal defects, but are asked to nullify the act of the voters in adopting an amendment. Conceding that we have no showing here to the effect that the board designated in Act No. 246, Pub. Acts 1941, functioned in accordance therewith, it does appear that the secretary of State performed his *constitutional* duties. Under these circumstances, we are of the opinion that the amendment should not now be vitiated.

In *Attorney General, ex rel. Miller,* v. *Miller,* 266 Mich. 127, 133 (106 A. L. R. 387), the Court quoted with approval from 20 C. J. pp. 181, 182, § 223, as follows:

"Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result. * * * Before election it is mandatory. if direct proceedings for its enforcement are brought, but after election it should be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential element of the election, or it is expressly declared by the statute that the particular act is essential to the validity

of the election, or that its omission will render it void.''

The following is also pertinent to decision:

''While the procedure prescribed *by the Constitution* for proposals to amend the Constitution must be duly followed and none of the requisite steps may be omitted, yet unless the courts are satisfied that the Constitution has been violated in the submission of a proposed amendment they should uphold it. *People, ex rel. Elder,* v. *Sours,* 31 Col. 369 (74 Pac. 167, 102 Am. St. Rep. 34).

''The substance more than the form is to be regarded in considering whether the complete system prescribed by article 17 of the Constitution for submitting proposals to amend the Constitution has been observed.

''Constitutional provisions derive their force not from the legislature, but from the people in whom, under our theory of government, the power is inherent, and in the exercise of such power to make changes in the Constitution there are practically no limits except those contained in the Federal Constitution when such proposals are made in the prescribed manner. Even in case some required form of procedure has been omitted by the legislature in submitting a proposal to amend the Constitution, but the same had been advertised or the notices published and the people have approved it at an election the amendment becomes a valid part of the Constitution. See *West* v. *State,* 50 Fla. 154 (39 South. 412).

''The difficulties which lie in the way of the people to amend the Constitution seem to emphasize the reasonableness of the rule that too strict a construction of the modes of procedure prescribed by legislative regulations and forms for the exercise of the power to submit a proposal to amend is not advisable or consistent with our institutions where the Constitution itself has provided a complete system

for that purpose. That doctrine may in some measure counteract the extreme view of the older school of statesmen who held that the Constitution was designed to check the propensity of the legislative department to intrude upon the duties and absorb the powers of other departments. The opportunity should be afforded the people, with the least amount of technical departmental obstructions consistent with the letter and spirit of the constitutional provisions on the subject, to express their desire as to a supposedly needed change in the Constitution." *Collier* v. *Secretary of State,* 116 Fla. 845, 857–859 (157 South. 40).

"In reaching the decision, the court must necessarily have in mind the universal rule that, whenever a constitutional amendment is attacked as not constitutionally adopted, the question presented is, not whether it is possible to condemn, but whether it is possible to uphold; that every reasonable presumption, both of law and fact, is to be indulged in favor of the legality of the amendment, which will not be overthrown, unless illegality appears beyond a reasonable doubt. *People, ex rel. Elder,* v. *Sours,* 31 Col. 369 (74 Pac. 167, 102 Am. St. Rep. 34); *People* v. *Prevost,* 55 Col. 199, 134 Pac. 129); *Martien* v. *Porter,* 68 Mont. 450 (219 Pac. 817).    *    *    *
"If the provisions of the Constitution for its own amendment are not literally, but are substantially, complied with in some portion of the procedure, and from which no injury results, the amendment, when ratified by a majority vote of the people is valid." *Board of Liquidation of State Debt of Louisiana* v. *Whitney-Central Trust & Savings Bank,* 168 La. 560, 564 (122 South. 850).

"Courts should, after the amendment has been adopted, be slow to declare the amendment unconstitutional on technical grounds unless the substantial requirements of the Constitution have been violated in the submission." *State, ex rel. Lampson,* v. *Cook,* 44 Ohio App. 501 (185 N. E. 212, 213).

Thus far what has been said herein applies equally to the petitions of the school districts as well as the cities. In conclusion on this phase of the case we hold that there were no such defects in the proceedings for submission as to vitiate the amendment. Furthermore, we hold that with the exception of the requirements in the concluding sentence of the amendment, the amendment is self-executing, does not require implementation by legislation, and that mandamus may issue to compel the tax collecting authority to comply therewith.

A further claim is made by the school districts, that the concluding sentence of the amendment, directing the legislature to make annual "grants" (*i.e.,* appropriations) for school districts, is also self-executing. We agree that this provision is mandatory to the extent that it is the duty of the legislature to make the appropriations referred to. It is the constitutional duty of the legislature to make the annual "grants" in accordance therewith, and to that extent this requirement is mandatory. But the difference between the language in this concluding sentence and the directions preceding it in the amendment is significant. The "tax collecting authority," *i.e.,* the defendants in this case, are directed by the amendment to "return" or to "remit" to the county treasurers and the school districts a certain part of the sales tax collections. This is a clear mandatory duty, and it is within the province of this Court to issue the writ directing these State officials to comply with that constitutional mandate. But the plaintiff school districts are not here asking the Court to order the legislature to make the appropriations referred to in the concluding sentence of the amendment. Nor has the legislature yet refused to do so. Presumably, the legislature will obey the mandate, but it is not within the power or the province of the Court to

order the legislature to do so. It is also significant that the concluding sentence provides a minimum annual appropriation or grant to be made by the legislature, but leaves it to the discretion of the legislature whether it will make an appropriation in excess of the minimum amount. But it cannot lessen the amount set up by the formula in the concluding sentence of the amendment.

It is apparent that the concluding sentence of the amendment is not lacking in ambiguity, and much difficulty seems to have been encountered in determining the meaning of the language used. A like situation arose in this Court when we were called upon to consider and construe the 15-mill amendment (article 10, § 21) to the Constitution. Referring to the difficulty in construing ambiguities, this Court, in *School District of City of Pontiac* v. *City of Pontiac, supra,* at page 346, said:

"Because of such ambiguity, it becomes the duty of the court to construe the amendment as worded in the light of established rules for the construction of constitutional provisions. Much has already been written concerning proper rules for such construction. Extended review of these rules would not be particularly helpful. Fortunately the pertinent fundamental guides for such construction have been clearly and concisely stated in former decisions of this court:

" 'It is a maxim that the object of construction, as applied to a written Constitution, is to ultimately ascertain and give effect to the intent of the people in adopting it.  *  *  *

" 'In construing constitutional provisions where the meaning may be questioned, the court should have regard to the circumstances leading to their adoption and the purpose sought to be accomplished.' *Kearney* v. *Board of State Auditors,* 189 Mich. 666, 671, 673."

In construing the amendment, we must have in mind the general purpose and consider that words of like import used in all parts of the amendment are intended to have a similar meaning. For example, the amendment directs the return of one cent of the "sales tax levy." To construe this literally would result in endless confusion and doubtless an impossible situation. Not all of the sales tax "levy" is collected, and the amount of the "levy" is impossible of accurate ascertainment. We must consider that by "sales tax levy" is meant the sales tax collected. Thus, returning a part of the "levy" of the sales tax must be construed to refer to the sales tax money collected, the three cents collected on each dollar of sales of personal property. In determining the "one cent of a State sales tax levy," there must be excluded from consideration all such items as expenses of collection, refunds, appropriations made therefrom, license fees, and penalties arising from enforcement of the law. At the outset, the amendment declares that the one cent out of each three cents collected, shall be divided "without deduction." In other words, under the first part of the amendment, sales tax "levy" means the three cents collected on each dollar of sales of tangible personal property. But in construing the meaning of the term "revenues" in the concluding sentence of the amendment, we must give effect to the difference between the use of the term "total State sales tax revenues" in the concluding sentence, and the use of the term "one cent of a State sales tax levy on each dollar of sales of tangible personal property" as used earlier in the amendment. We construe the term "total State sales tax revenues" as used in the concluding sentence, to mean all revenues, including license fees, interest and penalties. In this connection, all sales tax revenues and collec-

tions become State funds under the sales tax law.* Such moneys continue to be State funds, to be accounted for as such, until paid out by constituted authority according to law. Article 10, § 23, does not by-pass the State treasury. But we conclude that local governmental units and the school districts are entitled to an accounting of their respective shares in the sales tax collections under the first part of the amendment, beginning December 5, 1946, and this should be included in the payments made as of March 31, 1947, the end of the third quarter of the 1946–1947 fiscal year.

Except where, in the concluding sentence, such construction might result in an impossibility, we consider that by the use of the terms "year," "annual" grants, "fiscal year," in the amendment is meant, wherever possible, the fiscal year of State government, i.e., from each July 1st to each succeeding June 30th, inclusive. Such construction is indicated wherein the concluding sentence of the amendment refers to the State's fiscal year "1945–1946," meaning from July 1, 1945, to June 30, 1946, inclusive. To the same general import, the last sentence of the amendment, in referring to legislative grants, "in" a fiscal year, must be construed to mean "for" the fiscal year, not merely the appropriations actually made in or during such year. Appropriations are frequently made "in" a fiscal year for the ensuing "fiscal" year or for two "fiscal" years, and have been made for even longer periods of time. The fiscal year for which the appropriations were made, and not merely the fiscal year "in" which they may have been made, must control the proper construction of the amendment. The concluding sentence refers (literally) to legislative grants

* See Act No. 167, Pub. Acts 1933, as amended (Comp. Laws Supp. 1940, 1945, § 3663–1 et seq., Stat. Ann. and Stat. Ann. 1946 Cum. Supp. § 7.521 et seq.).—REPORTER.

"in" the fiscal year 1945–1946. It has been claimed that this must be construed literally, *i.e.*, only to such legislative appropriations as were granted by legislative enactment between July 1, 1945, and June 30, 1946, inclusive. We do not so construe the intent. We construe the concluding sentence of the amendment to mean:

"The legislature shall hereafter make annual grants (appropriations) to school districts out of general funds, over and above all constitutional allocations heretofore and herein provided, in at least amounts which bear the same ratio to total State sales tax revenues of the preceding year which the legislative grants in (appropriations for) the fiscal year 1945-1946 bore to said revenues of the preceding year."

The legislative appropriation for each ensuing year should be for each fiscal year, the next appropriation hereafter to be made for the fiscal year beginning July 1, 1947. As to the actual amounts of such legislative appropriations for each fiscal year hereafter, we conclude that the so-called formula is mandatory but not self-executing, calls for legislative action, and we decline to order the defendants herein, namely, the tax collecting authority, to execute the same. In that connection, see *School District of City of Pontiac* v. *City of Pontiac, supra,* at page 353.

A writ of mandamus may issue in accordance with and to the extent herein indicated. No costs awarded.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, REID, and NORTH, JJ., concurred. DETHMERS, J., took no part in the decision of this case.