CIVIL SERVICE COMMISSION *v.* DEPARTMENT
OF ADMINISTRATION.

1. STATUTES—APPROPRIATION ACT—CONSTRUCTION.

The appropriation for the civil service commission, as set forth in the statute, must be considered as a unit and all of the language therein considered in the state in which the legislature saw fit to leave it (Act No. 20, Pub. Acts 1948 [1st Ex. Sess.]).

2. CONSTITUTIONAL LAW—CONSTRUCTION OF CONSTITUTION.

Provision of Constitution prohibiting payment of money from the State treasury except in pursuance of appropriations made by the legislature applies to appropriation for the civil service commission and is not assumed to have been repealed by implication, even in part, by the civil service amendment to the Constitution directing the legislature to make a minimum appropriation for that commission (Const. 1908, art. 6, § 22; art. 10, § 16; Act No. 20, Pub. Acts 1948 [1st Ex. Sess.]).

3. SAME—CIVIL SERVICE AMENDMENT—CONSTRUCTION—APPROPRIATION—DISCRETION OF LEGISLATURE.

While the portion of civil service amendment to the Constitution directing the legislature to make an appropriation of at least 1 per cent. of the aggregate annual payroll of the State service for the preceding fiscal year as certified to by the civil service commission is mandatory, it is not self-executing, since the legislature may exercise some discretion in the matter in order to effectuate the appropriation (Const. 1908, art. 6, § 22).

4. SAME—CONSTRUCTION—CIVIL SERVICE AMENDMENT—APPROPRIATIONS.

In construing the provision of the civil service amendment to the Constitution relative to the appropriation which the legislature is directed to make for the civil service commission, that construction should be adopted which has the

REFERENCES FOR POINTS IN HEADNOTES
[1] 50 Am. Jur., Statutes, § 227.
[7] 49 Am. Jur., States, Territories and Dependencies, § 67.
[9] 14 Am. Jur., Costs, § 91.

least disruptive effect on the finances of the State and still be within the fair intendment of the civil service amendment (Const. 1908, art. 6, § 22).

5. SAME—CONSTRUCTION—CIVIL SERVICE AMENDMENT—STATE SERVICE—APPROPRIATIONS.

The term "State service" as used in portion of civil service amendment to the Constitution relative to the appropriation which the legislature is directed to make for the civil service commission is construed as limited to the State civil service since it is the payroll of that portion of the State service that directly determines the necessity for an increase or decrease in the appropriations for the commission, notwithstanding the term has another and more comprehensive meaning elsewhere in the amendment (Const. 1908, art. 6, § 22).

6. SAME — CONSTRUCTION — CIVIL SERVICE AMENDMENT — LEGISLATURE—MANDATE—AUTHORITY.

The provision of the civil service amendment to the Constitution directing the legislature to make an appropriation of 1 per cent. of the aggregate annual payroll of the State service for the preceding fiscal year as certified to by the civil service commission constitutes a mandate to the legislature to appropriate a sum not less than 1 per cent. of the annual payroll of persons under the State civil service to enable the commission to exercise its powers and impliedly authorizes the legislature to appropriate more if it finds necessity for so doing (Const. 1908, art. 6, § 22).

7. STATES — CIVIL SERVICE COMMISSION — APPROPRIATIONS — FUNDS FROM WHICH PAYABLE—CONSTITUTIONAL LAW.

Contention of civil service commission that appropriation for it is all payable from the general fund of the State is not sustained under provisions of the civil service amendment, where direction to legislature to make such appropriation does not restrict the legislature as to which fund from which payment may be made either specifically or by necessary inference; one stated restriction being that the appropriation made is not to be deducted from the payroll (Const. 1908, art. 6, § 22).

8. MANDAMUS—CREDIT—CIVIL SERVICE COMMISSION—DEPARTMENT OF ADMINISTRATION—APPROPRIATION.

Where department of administration cannot credit the civil service commission with the sum sought because the legislature had not made so large an appropriation and provi-

sion as to appropriation in the civil service amendment to the Constitution is not self-executing, the petition for a peremptory writ of mandamus to compel setting up of credit demanded is dismissed (Const. 1908, art. 6, § 22; Act No. 20, Pub. Acts 1948 [1st Ex. Sess.]).

9. COSTS—PUBLIC QUESTION—STATE DEPARTMENTS—APPROPRIATIONS. No costs are allowed in mandamus proceeding by civil service commission to compel department of administration to set up a credit in a given amount, a question of public interest being involved (Act No. 20, Pub. Acts 1948 [1st Ex. Sess.]).

Petition by Civil Service Commission of the State of Michigan against Department of Administration of the State of Michigan and Controller for mandamus compelling defendants to set up in the accounting books of the State as a credit for plaintiff the sum of $518,413. Submitted April 12, 1949. (Calendar No. 44,266.) Writ denied May 18, 1949.

*Robert H. Dunn* (*Foss O. Eldred,* of counsel), for plaintiff.

*Stephen J. Roth,* Attorney General, and *Peter E. Bradt,* Assistant Attorney General, for defendants.

REID, J. Plaintiff civil service commission filed its petition for a writ of mandamus directing defendants to set up as a credit for plaintiff in the accounting books of the State, the full sum of $518,413, without deductions therefrom. Plaintiff further suggests that in determining the matter of the mandamus, it is necessary that we should determine that the so-called fifth paragraph of the amendment to the State Constitution designated as article 6, § 22 is self-executing and establishes a continuing constitutional appropriation made by law for which legislative initiation is not required and further, determine that the basis for computing the

amount appropriated for the plaintiff commission comprises both the so-called classified service of the State (those employees who are under civil service) and unclassified service of the State (those not under civil service), and further, that we determine that the appropriation for plaintiff is payable solely from the general fund of the State.

Defendants deny that they may lawfully set up for the credit of plaintiff the full sum of $518,413, deny that the plaintiff is entitled to a writ of mandamus, and deny that the "aggregate annual payroll of the State service," referred to in the civil service amendment as a basis for the civil service commission appropriation, includes the so-called unclassified service of the State. Defendants deny that the appropriation for plaintiff is to be made solely from the general fund.

The following portion of Act No. 20, Pub. Acts 1948 (1st Ex. Sess.), an appropriation act, is in controversy in this case:

"Civil service commission

| | | |
|---|---|---|
| Constitutional provision of 1% on total payroll 1946–1947 of $51,841,312.20 | | $518,413.00 |
| Less items as follows: | | |
| 1% on $6,000,000.00, payroll of unclassified employees | $60,000.00 | |
| 1% on payrolls payable as follows from specific funds or sources | | |
| Highway | 68,764.00 | |
| Game and fish fund | 14,944.00 | |
| Aeronautics | 1,206.00 | |
| Federal funds | | |
| Michigan unemployment compensation commission | 60,500.00 | |
| Social security | 11,611.00 | |
| Child welfare | 410.00 | |
| Blind placement | 742.00 | |
| Vocational rehabilitation | 3,341.00 | |
| Vocational education | 713.00 | |
| Department of health | 4,665.00 | |
| Crippled children commission | 376.00 | |
| Veterans' vocational school | 357.00 | |
| Veterans' facility | 284.00 | |
| Agriculture | 1,631.00 | |
| Military pay | 1,026.00 | |
| James Decker Munson hospital | 2,842.00 | |
| School employees' retirement fund | 282.00 | |
| | | 233,694.00 |
| Total from general fund | | $284,719.00" |

The civil service amendment to the State Constitution was ratified at the general election on November 5, 1940, effective January 1, 1941, and is section 22 of article 6, Michigan State Constitution 1908. The portions thereof pertinent to this case are the first and fifth paragraphs. The first paragraph of said section 22 of article 6, which we will refer to as paragraph 1, is as follows:

"The State civil service shall consist of all positions in the State service except those filled by popular election, heads of departments, members of boards and commissions, employees of courts of record, of the legislature, of the higher educational institutions recognized by the State Constitution, all persons in the military and naval forces of the State, and not to exceed 2 other exempt positions for each elected administrative officer, and each department, board and commission."

The fifth paragraph of said article 6, § 22, which we will refer to as paragraph 5, is as follows:

"To enable the commission to execute these powers, the legislature shall appropriate for the 6 months' period ending June 30, 1941, a sum not less than ½ of 1 per cent., and for each and every subsequent fiscal year, a sum not less than 1 per cent., of the aggregate annual payroll of the State service for the preceding fiscal year as certified to by the commission."

Also pertinent for consideration in this case is article 10, § 16 of Michigan State Constitution 1908, which is as follows:

"No money shall be paid out of the State treasury except in pursuance of appropriations made by law."

Plaintiff claims that the first 3 lines of the quoted excerpt from Act No. 20, Pub. Acts 1948 (1st Ex. Sess.), being,

"Civil service commission
  Constitutional provision of 1% on total payroll
    1946–1947 of $51,841,312.20 ..... $518,413.00,"

was a complete compliance with the mandate of paragraph 5 heretofore quoted, and that the remainder of the quoted excerpt from said Act No. 20 in the nature of exceptions and deductions from the total appropriation of $518,413 was beyond and out-

side of the powers of the legislature, in disobedience of the mandate of the Constitution, and void; that therefore the appropriation of $518,413 should be by us determined to be the complete and constitutional portion of the act so far as the same relates to the appropriation for plaintiff and that the remainder of the quoted portion of the act (the deductions) should be determined to be unconstitutional and that we should strike such deductions from the act or at least treat and consider the act as though such deductions had been stricken. This we cannot do. The appropriation is a unit and we must consider it in the state in which the legislature saw fit to leave it. We decline to construe the act as contended for by plaintiff for the following reasons:

Article 10, § 16, Michigan State Constitution 1908, above quoted, is applicable to the controversy in this case. We cannot assume that the civil service amendment to the Constitution, hereinbefore referred to, by implication repealed even in part, article 10, § 16, nor that the two are to be considered inconsistent with each other. Paragraph 5 of the civil service amendment contains no language to show an intent on the part of the proposers and ratifiers of the amendment that the amendment should be self-executing. Paragraph 5 does not contain any words to the effect that there is annually appropriated by the amendment itself the amount of money contemplated therein. On the contrary, the legislature is evidently left with discretion to appropriate more than the 1 per cent. therein designated and therefore we must assume that the amendment contemplates that the legislature is to have at least some discretion in the matter of the appropriation. Action on the part of the legislature in at least some form is required in order for an appropriation to be effectuated.

In *City of Jackson* v. *Commissioner of Revenue,* 316 Mich. 694, having to do with the construction of the tax diversion amendment (Const. [1908] art. 10, § 23), we say at page 720:

"It is also significant that the concluding sentence provides a minimum annual appropriation or grant to be made by the legislature, but leaves it to the discretion of the legislature whether it will make an appropriation in excess of the minimum amount. But it cannot lessen the amount set up by the formula in the concluding sentence of the amendment."

We say further on page 723:

"The legislative appropriation for each ensuing year should be for each fiscal year, the next appropriation hereafter to be made for the fiscal year beginning July 1, 1947. As to the actual amounts of such legislative appropriations for each fiscal year hereafter, we conclude that the so-called formula is mandatory but not self-executing, calls for legislative action, and we decline to order the defendants herein, namely, the tax collecting authority, to execute the same."

We determine that paragraph 5 of art. 6, § 22, in question, is mandatory but not self-executing.

The parties to this case have stressed and argued in their briefs their differences over the item of $60,000 on the $6,000,000 payroll of unclassified employees among the deductions heretofore spoken of in Act No. 20, Pub. Acts 1948 (1st Ex. Sess.). The dispute involves a construction of paragraph 5 and of the words, "aggregate annual payroll of the *State service* for the preceding fiscal year" (italics supplied), and requires a determination of the basis for computing the 1 per cent. Plaintiff claims that the words, "State service," in paragraph 5 mean the same that those two words, "State service," mean in paragraph 1, and that therefore, the basis of com-

putation in paragraph 5 shall include the excepted services spoken of in paragraph 1.

In the absence of a compelling reason to the contrary, it would necessarily follow that the words in paragraph 5, "State service," should be accorded and considered to have the same meaning that those words have in paragraph 1. However, in considering the meaning of paragraph 5, we must take into consideration the reason for and nature of the basis for computation of the amount to be appropriated to the plaintiff commission and the fact that the amendment prescribes not a fixed amount or sum of money for each year but an amount varying according to an annual payroll, which of course might considerably decrease or increase from year to year. The reason for the adoption of a fluctuating formula is evidently that the work of the commission might be greatly increased or changed from year to year, depending upon the number of persons under its supervision, thus varying the amount of labor necessary to exercise its powers.

It can be considered that the proposers and ratifiers of the civil service amendment had in mind that the excepted constitutional corporations might have a considerably increased payroll from year to year and thus, under the construction for which plaintiff contends, if the payroll became greatly increased, then the amount commanded by paragraph 5 to be appropriated to the plaintiff commission to execute its powers would be greatly increased. However, the labor of the plaintiff commission and necessity for additional appropriation therefor would not be correspondingly increased because the employees of the constitutional corporations are not subject to the control of the plaintiff commission but are expressly excepted in paragraph 1 of the civil service amendment.

The commission has no authority over the positions in State service which are expressly exempted from its jurisdiction in the first paragraph of the amendment. The words in the third paragraph of the amendment, "The commission shall  *  *  *  approve or disapprove disbursements for all personal services" apply only to positions in the State civil service.

Likewise, it can be considered that there was also in mind in proposing and ratifying the amendment that it could happen, as in the case of war or extraordinary preparations for war, that the total payroll of persons in military and naval forces of the State could suddenly become immensely increased in some given year or years with no corresponding increase of the duties or personnel of plaintiff commission, because such persons are not under plaintiff's supervision. When the civil service amendment was adopted, it was not at all certain that even 1 per cent. of the civil service payroll would be needed to enable plaintiff commission to exercise its powers.

For the foregoing reasons, we should adopt the construction of the mandate that would have the least disruptive effect on the finances of the State and still be within the fair intendment of the civil service amendment. The construction of the words in paragraph 5, "State service," contended for by plaintiff, leads to highly illogical results. We therefore conclude that it is not the meaning of paragraph 5 to include the payroll of the services excepted in paragraph 1 as part of the basis for computing the 1 per cent., but rather it is meant that the basis for computation is restricted to the State civil service payroll inasmuch as that payroll directly determines the necessity for an increase or decrease in the appropriations for plaintiff commission.

We construe the mandate in paragraph 5 to be a mandate to the legislature to appropriate a sum not

less than 1 per cent. of the annual payroll of persons under the State civil service, to enable plaintiff to exercise its powers, and that the mandate goes no further. Authority on the part of the legislature is implied to appropriate more if the legislature shall find it necessary to appropriate more to enable plaintiff to exercise its powers, but the amendment to the Constitution does not contemplate that the legislature shall have any optional right to appropriate less than the 1 per cent. computed as we have indicated above.

The 1 per cent. is set forth in paragraph 5 as the formula for determining the minimum amount to be appropriated to enable plaintiff to exercise its powers. Paragraph 5 does not specifically nor by necessary inference designate the source (what fund or funds) from which it is to be appropriated, except that the 1 per cent. is not to be deducted from the payroll.

We do not determine other questions raised in this matter because they are found to be unnecessary to a determination of the question of the issuance of a writ of mandamus.

We find that the defendants are not able to comply with the demand of plaintiff as to the setting up of the fund in the amount requested, $518,413, because the legislature has not made the appropriation of such amount and we find the legislature has been given no mandate to make so large an appropriation as that demanded by plaintiff, for which reason and because paragraph 5 is not self-executing, the petition for a peremptory writ of mandamus is dismissed. No costs, a question of public interest being involved.

SHARPE, C. J., and BUSHNELL, BOYLES, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.