CARMAN *v.* SECRETARY OF STATE

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—AMENDMENT—INITIATORY PETITION—STATUTES.

The Michigan Constitution requires that an initiatory amendment shall be published in full as provided by law with existing provisions of the Constitution which would be altered or abrogated thereby and that the initiatory petition shall be in the form and shall be signed and circulated as prescribed by law and the same requirements are made by statute regarding the petition for an amendment to the Constitution (Const 1963, art 12, § 2; MCLA § 168.482).

2. CONSTITUTIONAL LAW—AMENDMENT—INITIATORY PETITIONS—SUFFICIENCY—STATUTES.

Initiatory petitions proposing an amendment to an existing provision of the Michigan Constitution, although expressly initiating the proposal as an amendment to a section of the Constitution but which did not under the heading required by a statute set forth the existing section of the Constitution and which would, if given constitutional effect, both alter and amend that section of the Constitution were therefore insufficient— technically at the very least—for want of specific compliance with that statute (MCLA § 168.482).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 34, 35.
[2, 7, 8] 16 Am Jur 2d, Constitutional Law § 26 *et seq.*
[3] 16 Am Jur 2d, Constitutional Law § 76.
[4] 16 Am Jur 2d, Constitutional Law § 75.
[5] 16 Am Jur 2d, Constitutional Law §§ 26–44, 58.
[6] 16 Am Jur 2d, Constitutional Law § 35.
[9, 12] 16 Am Jur 2d, Constitutional Law §§ 26, 27, 29, 36.
[10] 16 Am Jur 2d, Constitutional Law §§ 26, 27.
[11] 5 Am Jur 2d, Appeal and Error § 1007.

3. Constitutional Law—Construction.

Section 2 Article 12 of the 1963 Michigan Constitution must be construed in order so as not to be viewed and applied with absurdly devastating result, as though the first sentence of the last paragraph thereof read in concluding part "and shall abrogate or amend [such] existing provisions of the Constitution at the end of 45 days after the date of the election at which it was approved" (Const 1963, art 12, § 2).

4. Constitutional Law—Construction—Common Understanding.

The duty in the construction of a constitutional provision is to ascertain the common understanding, to ascertain that meaning which the provision in question would naturally convey to the popular mind, and to apply that interpretation which reasonable minds, the great mass of the people themselves, would give it.

5. Constitutional Law—Construction—Approval of Amendment.

Section 2 of Article 12 of the 1963 Michigan Constitution is construed to mean that an actually initiated and submitted constitutional amendment, if approved by a majority of the electors voting on the question, shall become part of the Constitution; hence, an initiated amendment having been approved by such a majority of voters the result is that § 2, Article 8, of the Constitution has been amended as of December 19, 1970 as approved by the voters (Const 1963, art 12, § 2; art 8, § 2).

6. Constitutional Law—Amendment—Secretary of State.

The constitutional purpose of the requirement that an initiatory amendment shall be published with existing provisions of the Constitution which would be altered or abrogated thereby is to assure as near as law can provide that, before and particularly on election day, all voters are fully informed of the effect an initiated proposal will have upon an existing constitutional provision should that proposal receive electoral approval and the Secretary of State satisfied that constitutional purpose when he saw to it that his published notice listed existing § 2 of Article 8 as liable to alteration or amendment (Const 1963, art 8, § 2; art 12, § 2).

7. Constitutional Law—Construction—Amendment—Approval of Amendment.

Provisions of a constitution by which the people have consented to place restrictions upon their own power in adopting amendments to the Constitution should not be so construed,

after approval by the people, by a too strict adherence to some of the requirements so that the will of the people would be defeated by an unimportant accident over which they had no control as courts should inquire into the fair purpose and meaning of such restrictions and should regard the substance rather than the letter of such requirements.

8. CONSTITUTIONAL LAW—AMENDMENT—INITIATORY PETITIONS—APPROVAL OF AMENDMENT—SECRETARY OF STATE—STATUTES.

After an affirmative vote of the electors on a constitutional amendment to add a new paragraph to section 2 of Article 12 of the 1963 Michigan Constitution was certified, the statutory requirement that initiatory petitions should state and insert the provisions of the Constitution to be altered or abrogated became directory only, and that requirement was fulfilled to constitutional satisfaction by the manner in which the Secretary of State performed his duty of due publication of the proposal and the provisions to be altered or abrogated (MCLA § 168.482).

### DISSENTING OPINION

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, J.

9. CONSTITUTIONAL LAW—ELECTIONS—ELECTION CURES ERROR.

*The people have the right to change their constitution, but must do it in a proper, legal way and the rationale of a new doctrine called "election cures errors", which fails to satisfy either logic or law, should be rejected.*

### DISSENTING OPINION

ADAMS, J.

10. CONSTITUTIONAL LAW—ALTER OR ABROGATE—PROPOSAL C.

*"Proposal C" is an addition to art 8, § 2 of the Michigan Constitution of 1963 and it does not alter or abrogate the original provision of that section (Const 1963, art 8, § 2).*

11. APPEAL AND ERROR—DENIAL OF LEAVE TO APPEAL.

*The Michigan Supreme Court, having once denied application for leave to appeal, should not reopen a case which was litigated by appropriate parties to a final judgment as this brought an end to the issues raised in the case (GCR 1963, 852.2[4] [d]).*

12. CONSTITUTIONAL LAW — AMENDMENT — PETITIONS — ELECTION CURES ERROR.

*Had there been error in the submission of "Proposal C" to the people, absent a fatal defect in the petitions, the "election-cures-error" doctrine would be applicable and a vote of the people would be decisive on the question of the adoption of the amendment.*

Appeal from Court of Appeals, Division 2, Holbrook, P. J., and Fitzgerald and T. M. Burns, JJ., granting writ of mandamus against the Secretary of State, Director of Elections, and Board of State Canvassers. Submitted January 5, 1971. (No. 20 January Term 1971, Docket No. 53,025.) Decided March 31, 1971.

26 Mich App 403 judgment vacated.

Original action in Court of Appeals by Kenneth W. Carman, David S. Evans, Jr., Terry Herndon, Harriett M. Phillips, Mary Ellen Riordan, Horace Sheffield, Jay Wabeke, and others against the Secretary of State, Director of Elections, and Board of State Canvassers, for a writ of mandamus to process for placement on the November general election ballot a proposed amendment to the State Constitution. Writ granted. Defendants appeal. Judgment of Court of Appeals vacated and new judgment entered.

*Levin, Levin, Garvett & Dill* (by *Erwin B. Ellman, Daniel J. Hoekengan,* and *Wallace K. Sagendorph*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Russell A. Searl,* Assistant Attorney General, for defendants.

PER CURIAM. July 15, 1970 plaintiffs sought mandamus in the Court of Appeals to force submission to the electors of an allegedly initiated "Amendment to the Constitution" which, later, came to be known publicly as "Proposal C." The writ was ultimately granted. For details, see the opinion of Division 2, released September 2 (26 Mich App 403). Upon strength of that opinion and our order denying leave entered 12 days later (384 Mich 751), the amendment proposed—and now in question—was submitted to the electors November 3 and approved by a strong majority.

The ensuing opinion should presay a cautionary note. It is that initiatory § 2 of Article 12 of the Constitution of 1963 follows generally, yet differs in important respects from the corresponding sections of the Constitution of 1908 as those sections stood when certain of our past decisions were considered and released. Compare said § 2 with §§ 2 and 3 of Article 17 of the former Constitution; looking at the latter both in their original aspects and as amended in 1941. We shall consider this earmark upon present reference to the *City of Jackson* case (1947), 316 Mich 694.

The acceptable and visibly critical question we are called upon to decide is posed by the Attorney General:

"II. Is a petition proposing an amendment to an existing section of the Constitution sufficient when that section as presently in effect [*sic*] is not inserted under the heading 'Provisions of Existing Constitution Altered or Abrogated by Such Proposal if Adopted'?"

Division 2 responded in the affirmative. The Attorney General contends for a negative answer. We agree with him. The final question, then, is what now to do; the proposed amendment having been

approved and apparently adopted. That question will come to discussion and determination in the division designated "Second," below.

*First:* Section 2 of Article 12 of the Constitution requires that an initiatory amendment shall be published ("in full as provided by law") with "existing provisions of the Constitution which would be altered or abrogated thereby." The same section also requires that the initiatory petition shall be "in the form, and shall be signed and circulated" as prescribed by law.

The constitutionally beckoned legislation appears in § 482 of the Michigan election law of 1954, as minor-amended in 1965 (MCLA § 168.482 [Stat Ann 1970 Cum Supp § 6.1482]). Section 482 provides, pertinently:

" * * * If the proposal would alter or abrogate any existing provision of the constitution, the petition should so state and the provisions to be altered or abrogated shall be inserted, preceded by the words:

" 'Provisions of existing constitution altered or abrogated by such proposal if adopted.' "

The now unmalleable fact of political action is that this initiatory petition did not set forth any provision or provisions of the existing Constitution which would be "altered or abrogated by such proposal if adopted."[1] Although *expressly* initiating the proposal as an amendment of § 2 of Article 8, the petition did not under the required heading set forth "existing" § 2 of Article 8. Such omission is

---

[1] On the face of each initiative sheet the "Proposed Amendment" was set forth in its "full text," according to the requirement appearing in the first paragraph of § 2 of Article 12. Such full text will now become the second paragraph of § 2 of Article 8 of the Constitution. For the full text of amended section 2, see division *"Second,"* post at 449.

the crux of the Attorney General's stated question II, above.

Had there been time for decisive judicial action during that critical 8 days of September which ensued upon receipt of briefs for and against the Attorney General's emergent application for leave to review Division 2's September 2 decision, the stated omission doubtless would have arrested the initiation and enjoined submission of the mentioned proposal. There was no such time, however, hence our present effort to review and decide that which, hopefully, will result in better timing of appeals to the judicial process for determination of questions of statewide importance that are justiciable and determinable in time for election day. In a word, a word we direct particularly to issues arising from initiated or legislatively proposed constitutional amendments, this petition for mandamus might better have been July-filed *in this Court,* GCR 1963, 714.1(1) notwithstanding. See the independently supreme authority provided by § 4 of the judicial article.

There is no unstilted way to avoid conclusion that the amendment initiated by these plaintiffs will, if given constitutional effect, both alter and amend § 2 of Article 8 of the Constitution of 1963.[2] The initiatory petitions were therefore insufficient— technically at least—for want of specific compliance with the constitutional complement, § 482.

*Second:* The electors have firmly approved this initiated amendment of § 2 of Article 8. That they

---

[2] In the *Pontiac School District* case (1933), 262 Mich 338, 344, the Court initiated employment of alternative words for the constitutional expression "altered or abrogated," that is, the Justices said the constitutional words also mean "amended or replaced." This was pursued in *Graham* v. *Miller* (1957), 348 Mich 684, 694, a case with respect to which 3 members of the Court voted to apply the election-cures-error doctrine. Note that "amend" appears now in the final paragraph of § 2 of Article 12.

have done in the face of omitted specific performance of a constitutionally authorized legislative mandate that initiators *shall* set forth in their petitions, for the informative benefit of petition-signers, the very constitutional provision or provisions such initiators desire to alter or amend. What is the result? We think the answer appears in the first sentence of the final paragraph of § 2 of Article 12 (quoted below), viewing it as we should according to the established rules of constitutional construction and the Secretary of State's salutary corrective action which preceded the November 3 election.

Let us first compare what *was,* in the initiative portion of the former Constitution, with what now *is.* Section 2 of Article 17 of the 1908 Constitution read:

"Any constitutional amendment initiated by the people *as herein provided,* shall take effect and become a part of the constitution if the same shall be approved by a majority of the electors voting thereon *and not otherwise.*" (Emphasis added.)

The 1941 amendment of that same § 2 read:

"Any constitutional amendment initiated by the people *as herein provided,* shall take effect and become a part of the constitution if the same shall be approved by the number of qualified electors required in section 1 hereof for the approval of amendments proposed by the legislature, *and not otherwise.*" (Emphasis added.)

Present § 2 of Article 12 proceeds:

*"If the proposed amendment is approved by a majority of the electors voting on the question, it shall become part of the constitution, and shall abrogate or amend existing provisions of the constitution*

at the end of 45 days after the date of the election at which it was approved."[3]   (Emphasis added.)

Reading these successive provisions with due care, one after the other, it is clear from the words employed and understood in 1961–1962 that some less rigid initiatory procedure was written, for "the common understanding." Formerly an amendment had to be initiated "as herein provided." Formerly, if thus initiated, it would become a part of the constitution should it be approved by the designated majority, but "not otherwise." In 1963, however, the express requisite of initiation "as herein provided" was eliminated. So was the "not otherwise" stricture.

The due and applicable rule of construction is *not* any one of the many by which we determine legislative intent. It is instead a duty to ascertain "the common understanding"; a duty to ascertain "that meaning which it [the provision in question] would naturally convey to the popular mind"; a duty to apply that interpretation "which reasonable minds, the great mass of the people themselves, would give it."

In one of the opinions of *Lockwood* v. *Commissioner of Revenue* (1959), 357 Mich 517, 567–570, some of these dovetailing rules of constitutional construction were quoted from the writings of great men of our legal past. Here are some of them. The first was written by Mr. Justice Story, the next

---

[3] That present § 2 *not* be viewed and applied with absurdly devastating result, the concluding portion of this sentence "must be construed as though it read:"
"and shall abrogate or amend [such] existing provisions of the constitution at the end of 45 days after the date of the election at which it was approved."
For demonstrations of this method of judicial reading of constitutional provisions, see *School District of City of Pontiac* v. *City of Pontiac* (1933), 262 Mich 338, 351 and *City of Jackson* v. *Commissioner of Revenue* (1947), 316 Mich 694, 723.

by Mr. Justice CAMPBELL, and the last by Mr. Justice COOLEY.[4]   (The COOLEY quotation is taken from *May* v. *Topping* [1909], 65 W Va 656, 660 [64 SE 848]):

" 'Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, *and fitted for common understandings.* The people make them, the people adopt them, the people must be supposed to read them, with the help of common sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss.' (1 Story, Constitution [5th ed], § 451, p 345.)"

" 'The cardinal rule of construction, concerning language, is to apply to it *that meaning which it would naturally convey to the popular mind,* in all cases where the propriety of such construction is not negatived by some settled rule of law. In all instruments which are submitted for confirmation to the people themselves, and which derive all their validity from a popular vote, such a construction is peculiarly necessary; for otherwise they would be defrauded of the right to frame their own government according to their own will. (*People* v. *Dean* [1866], 14 Mich 406, 417, 418).' "

" 'A Constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.*  "For as the Constitution does not derive its force from the con-

---

[4] In each instance the test of "common understanding" appears plainly as having originated with Cooley's Constitutional Limitations. It is the backbone of the first section (§ 75), appearing under "c. Meaning of Language," 16 Am Jur 2d, Constitutional Law, pp 255, 256.

vention which framed, but from the people who ratified it, *the intent to be arrived at is that of the people,* and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding,* and ratified the instrument in the belief that that was the sense designed to be conveyed." (Cooley's Const Lim 81).' "

Now let us ascertain what common understanding, what meaning naturally conveyed to the popular mind, what interpretation the great mass of the people themselves would draw reasonably from the quoted simple English of the final paragraph of § 2 of Article 12. Is it not, and was it not when the Constitution of 1963 was approved and adopted, that if an *actually initiated and submitted amendment* should be "approved by a majority of the electors voting on the question" (as indeed here), then that amendment "shall" become a part of the Constitution?

Our answer is "Yes." Hence, this initiated amendment having been approved by a majority of the electors, the result is that § 2 of Article 8 has been amended so that, as of December 19 last, it has read as follows:

"Sec. 2. The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin.

"No public monies or property shall be appropriated or paid or any public credit utilized, by the legislature or any other political subdivision or agency of the state directly or indirectly to aid or maintain any private, denominational or other nonpublic, pre-elementary, elementary, or secondary

school.  No payment, credit, tax benefit, exemption
or deductions, tuition voucher, subsidy, grant or
loan of public monies or property shall be provided,
directly or indirectly, to support the attendance of
any student or the employment of any person at
any such nonpublic school or at any location or
institution where instruction is offered in whole or
in part to such nonpublic school students.  The leg-
islature may provide for the transportation of stu-
dents to and from any school."

A thought of constitutional substance rather than
form should be inserted here.  It is that the con-
stitutional purpose of the "alter or abrogate" re-
quirement of *publication,* set forth as it is in the
second paragraph of § 2 of Article 12, is to assure
as near as law can provide that, before and particu-
larly *on* election day, *all voters* are fully informed
of the *effect* an initiated proposal will have upon
an existing constitutional provision (or provisions)
should that proposal receive electoral approval.
The Secretary of State satisfied that constitutional
purpose when he saw to it that his published notice
listed existing § 2 of Article 8 as liable to alteration
or amendment.

Comparing the above purpose with the salient
requirement of the statute (§ 482), we find that the
latter was intended to inform the *petition-signer,*
should he sign, of that same *effect.*  Both methods
of dissemination of necessary information to the
public are wholesome and desirable, yet the one
that counts in controlling substance over the more
technical other is that which the *elector himself*—
not the petition-signer—receives by the separate
action of the Secretary of State.  Here the button-
holed petition-signers were *not* apprised pursuant
to § 482 of such *effect,* at least by the petition sheets
themselves.  But they, along with the far greater
throngs of electors on election day, were directly

notified—if they would but read—of that same *effect*.

The careful reader of *City of Jackson* v. *Commissioner of Revenue* (1947), 316 Mich 694, 716–718 will note that the Court applied to its decision that which was urged upon it in several of the briefs of the many counsel participating, namely, the "election-cures-error" doctrine. On page 716 the Court opened its discussion by saying:

"We are not here deciding a case where there is a fatal defect in the petitions, as a result of which the proposition should be withheld from submission to the voters. Such were the situations in the *Scott* and *Leininger Cases, supra* [202 Mich 629, and 316 Mich 644]. Here we have a situation where we find there were no such fatal defects, but are asked to nullify the act of the voters in adopting an amendment."

Then the Court went on to quote at considerable length from *Attorney General, ex rel. Miller,* v. *Miller* (1934), 266 Mich 127 (106 ALR 387). The entire purport of the Court's quotation of *Miller* is that the courts should look at procedural errors of submission through different eyeglasses, once the electors have voted affirmatively.

A fair summary of that which was quoted with approval from *Miller* appears on page 717:

" 'Even in case some required form of procedure has been omitted by the legislature in submitting a proposal to amend the Constitution, but the same had been advertised or the notices published and the people have approved it at an election the amendment becomes a valid part of the Constitution.' "

This last quotation is a counterpart of present § 2 of Article 12 of our Constitution. To repeat for emphasis:

"If the proposed amendment is approved by a majority of the electors voting on the question, it shall become part of the constitution, and shall abrogate or amend existing provisions of the constitution   *   *   *   ."

Supported now by said § 2 of Article 12 as quoted, we adopt these principles from *State* v. *Winnett* (1907), 78 Neb 379, 387, 388 (110 NW 1113, 1116; 10 LRA [NS] 149), where it was said that, if a too strict adherence were given to some of the requirements:

"the will of the people of the state would be defeated by an unimportant accident over which they had no control. If other provisions of the constitution are mandatory and are to be taken literally, those provisions by which the people have consented to place restrictions upon their own power in adopting amendments to the constitution should not be so construed [after approval by the people]. We should inquire into the fair purpose and meaning of such restrictions, and should regard the substance rather than the letter of such requirements."

Our summarized ruling is that after this particular affirmative vote of the electors was certified, the quoted requirement of § 482 became directory only, and that the requirement was fulfilled to constitutional satisfaction by the manner in which the Secretary of State performed his duty. For demonstrative evidence of such performance, see the appendix hereto. It portrays the Secretary of State's compliance with the constitutional mandate of due publication of that which was popularly understood as becoming, if approved, a new paragraph "added" to existing § 2 of Article 8. Note the "Provision to be *Added* to Article 8, Section 2 if the proposal is adopted." and then the heading above the printing of "existing" § 2 of Article 8, that is, "Existing Pro-

vision of Constitution to which will be *added* the new language, if adopted."

The judgment of Division 2 is vacated. A new judgment will enter on review, determining that § 2 of article 8 of the Constitution has read and reads now as set forth *ante* at pp 453, 454. No costs.

BLACK, T. E. BRENNAN, SWAINSON and WILLIAMS, JJ., concurred.

---

## *APPENDIX*

Proposal "C" was one of three "State Propositions" which, under direction of the Secretary of State, were submitted to the electors November 3. All three were submitted together by official notice under this heading:

### "N O T I C E

#### "STATE PROPOSITIONS

### "GENERAL ELECTION, NOVEMBER 3, 1970."

Headed thus and "published in full as provided by law" by posting "in conspicuous places in the room where such election is held." (PA 1954, No 116, § 480 [MCLA § 168.480; Stat Ann 1956 Rev § 6.1480]), Proposal "C" appeared informatively before the people as follows:

### "PROPOSAL C

#### "PROPOSED CONSTITUTIONAL AMENDMENT

"(AMENDMENT TO ARTICLE 8, SECTION 2 OF THE STATE CONSTITUTION PROPOSED BY INITIATIVE PETITION)

"This proposal will appear on the ballot as follows:

## "PROPOSAL C

"This amendment adds language to the constitution to:

"(a) Prohibit use of public funds to aid any non-public elementary or secondary school;

"(b) Prohibit use of public funds, except for transportation, to support the attendance of any students or the employment of any person at non-public schools or at any other location or institution where instruction is offered in whole or in part to non-public school students;

"(c) Prohibit any payment, credit, tax benefit, exemption or deductions, tuition voucher, subsidy, grant or loan of public monies or property, directly or indirectly, for the above purposes.

"Should this amendment be adopted?

"Yes ☐
"No ☐

"Provision to be Added to Article 8, Section 2 if the proposal is adopted.

"Article 8, Section 2. No public monies or property shall be appropriated or paid or any public credit utilized, by the legislature or any other political subdivision or agency of the state directly or indirectly to aid or maintain any private, denominational or other nonpublic, pre-elementary, elementary, or secondary school. No payment, credit, tax benefit, exemption or deductions, tuition voucher, subsidy, grant or loan of public monies or property shall be provided, directly or indirectly, to support the attendance of any student or the employment of any person at any such nonpublic school or at any location or institution where instruction is offered in whole or in part to such nonpublic school students. The legislature may provide for the transportation of students to and from any school.

"Exiting Provision of Constitution to which will be added the new language, if adopted.

"Sec. 2. The legislature shall maintain and support a system of free public elementary and secondary schools as defined by law. Every school district shall provide for the education of its pupils without discrimination as to religion, creed, race, color or national origin."

T. M. Kavanagh, C. J. (*dissenting*). We dissent. A majority of our Court today has held that the Attorney General was correct in ruling that the petition proposing the amendment was not sufficient to place the amendment on the ballot and that the majority of the Court of Appeals' panel erred in ruling that the petition was sufficient. Despite this conclusion a majority of this Court proceeds to create out of whole cloth a new doctrine called "Election Cures Errors."

The people have the right to change their Constitution, but must do it in a proper, legal way. The rationale of the majority fails to satisfy either logic or law, and we reject it. We vote to void the election.

T. G. Kavanagh, J., concurred with T. M. Kavanagh, C. J.

Adams, J. (*dissenting*). I disagree with the *per curiam* opinion in this case. I agree with the opinion of Judge Holbrook of the Court of Appeals in which he was joined by Judge Fitzgerald.

Proposal "C" is an addition to art 8, § 2 of the Michigan Constitution of 1963. It does not alter or abrogate the original provision of that section. Having once denied application for leave to appeal, this Court should not have reopened the *Carman* case.

The *Carman* case was litigated by appropriate parties to a final judgment which this Court declined to review. This brought an end to the issues raised in that case. The General Court Rules of 1963 provide:

"If application for leave to appeal is denied after decision by the Court of Appeals, the decision of the Court of Appeals shall become the final adjudication and shall be enforced in accordance with its terms." GCR 1963, 852.2(4)(d).

I agree that had there been error in the submission of "Proposal C" to the people, absent a fatal defect in the petitions, the "election-cures-error" doctrine would be applicable and a vote of the people would be decisive on the question of the adoption of the amendment.

I would affirm the judgment of the Court of Appeals.