*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GWCC HOLDINGS, LLC,

        Plaintiff-Appellant,

v

ALPINE TOWNSHIP, EMILY SYMKO, and LISA POSTHUMUS LYONS,

        Defendants-Appellees,

and

KENNETH J. SANDERS,

        Intervening Defendant.

FOR PUBLICATION
April 25, 2024
9:05 a.m.

No. 367925
Kent Circuit Court
LC No. 23-007745-AW

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

This case involves the adequacy of a petition form. Kenneth J. Sanders filed petition forms seeking a voter referendum regarding Alpine Township's approval of a rezoning ordinance ("the ordinance") requested by GWCC Holdings, LLC (GWCC). The Alpine Township clerk ("the Clerk") deemed Mr. Sanders' forms adequate in late July 2023; the referendum was set to appear on the November 2023 ballot. GWCC filed a complaint in Kent Circuit Court in August 2023 alleging that the petition did not conform to MCL 168.482(8) and MCL 168.544c(1), as required by MCL 125.3402. The trial court disagreed, finding the petition in compliance with applicable Michigan election law. GWCC appealed in September 2023, and while this appeal was pending, Alpine Township citizens voted in November 2023 to reject the ordinance.[1]

---

[1] The election results do not appear in the lower court record because the election occurred after the proceedings in the trial court concluded. However, they have been provided to this Court on appeal and appear to be uncontested, and we accordingly take judicial notice of them. MRE 201.

-1-

GWCC appeals as of right and argues that the trial court erred when granting summary disposition to defendants, specifically by determining the petition complied with all formal requirements applicable under Michigan election law. We agree that the petition did not comply with MCL 168.482(8), but we nonetheless affirm summary disposition in favor of defendants for the reasons stated in this opinion.

## I. BACKGROUND

GWCC owns a parcel of real property in Alpine Township and is under contract to purchase adjacent real property in the township. GWCC initially sought the ordinance for permission to develop at these properties a mixed-use residential neighborhood consisting of single-family homes, villas, condominiums, open space, and recreational amenities. Alpine Township approved GWCC's request in rezoning ordinance #23-01, which rezoned the properties from low density residential to open space neighborhood planned unit development.

After the ordinance was approved, Mr. Sanders submitted a "Notice of Intent to File Referendum Petition" to Alpine Township, notifying the township that he intended to request a referendum on the ordinance. Alpine Township accepted the notice of intent under MCL 125.3402. On May 22, 2023, Sanders submitted a "Local Proposal Petition" to the Clerk, which included 147 separate signature pages and provided the following purpose:

> A referendum election on Alpine Township Rezoning #23-01 . . . approved by the Alpine Township Board of Trustees on April 17, 2023 . . . , for the rezoning of the property addressed 2555 4 Mile Road NW (west half of property) and 2451 4 Mile Road NW (east half of property) from R-1, Low Density Residential to OSN-PUD, Open Space Neighborhood Planned Unit Development.

After receiving and reviewing the petition, the Clerk determined that the petition "meets all applicable requirements of the Michigan election law" and was therefore adequate under MCL 125.3402. The effect of this determination was that the ordinance would not take effect until it received majority approval of voters in the township. See MCL 125.3402(3)(c). Less than a month after that determination was made, GWCC filed its complaint in the trial court.

At issue on appeal is whether two formal aspects of the petition—the location of a circulator compliance statement and the type size of certain language—complied with the requirements of Michigan law. Therefore, a description of Mr. Sanders' petition is necessary. Mr. Sanders' petition includes three distinct boxes at the top of the first page. The first box on the petition's top-left corner reads, "INSTRUCTIONS ON REVERSE SIDE[.]" Just below this box, still in the top-left corner, is another box for the petition circulator to check off whether he or she was paid or a volunteer ("the circulator check box"). Finally, there is a third box on the petition's top-right corner, to the right of the circulator check box, declaring signatures invalid if the circulator does not comply with Michigan law ("the circulator compliance statement").

In August 2023, GWCC filed a complaint (1) alleging the petition was facially invalid for failing to comply with the statutory requirements of MCL 168.1 *et seq.*, and (2) seeking declaratory, injunctive, and mandamus relief. According to GWCC, because the petition was facially defective, the proposed referendum could not appear on the November 2023 ballot.

GWCC also moved for summary disposition under MCR 2.116(C)(9) and MCR 2.116(C)(10). First, GWCC asserted the petition did not comply with MCL 168.482(7) and (8), as incorporated by reference in MCL 168.482(6), which required the circulator compliance statement be placed "below" the circulator check box. On Mr. Sanders' petition, the circulator compliance statement box was across the page to the right of the circulator compliance statement. Second, GWCC asserted that various language from the petition did not comply with the type-size requirements listed in MCL 168.544c(1).[2]

In response, Alpine Township and the Clerk filed a cross-motion for summary disposition under MCR 2.116(I)(2).[3] They countered that MCL 168.482(7) and (8) did not apply to the petition and, even if they did, the petition satisfied the requirement that the circulator compliance statement be placed below the circulator check box. Specifically, according to Alpine Township and the Clerk, the term "below" in MCL 168.482(8) is synonymous with "inferior," allowing placement of the circulator compliance statement beneath *or* to the right of the circulator check box. They also argued that the type-size requirements of MCL 168.544c(1) were inapplicable to the petition. Lastly, Alpine Township and the Clerk argued that the petition only needed to substantially comply with any applicable requirements under MCL 168.544d.

The trial court, in September 2023, issued an opinion and order ruling in Alpine Township and the Clerk's favor. The trial court agreed with GWCC that the Legislature intended MCL 168.482(6) to incorporate MCL 168.482(7) and (8). Having determined that MCL 168.482(7) and (8) applied to the petition, the trial court construed the meaning of "below" in MCL 168.482(8). Relying on a dictionary definition of this term because it was not defined under Michigan election law, the court concluded that below meant inferior, not strictly beneath.

> Had the Legislature intended to require the [circulator compliance statement] to be underneath the [circulator] check box[], the Legislature could have used the term "underneath" or "beneath" to express its intent. The Court must assume that, by electing to use "below," the Legislature did not intend to limit the placement of the [circulator compliance statement] to underneath the [circulator] check box[] but rather to allow for placement of the [circulator compliance statement] elsewhere, provided the [circulator compliance statement] is placed in an inferior position to the [circulator] check box[] on the petition.

Accordingly, the trial court concluded that the petition complied with Michigan law because the circulator compliance statement was placed to the right of, and thus inferior to, the circulator check box. Next, the trial court agreed with Alpine Township and the Clerk that MCL 168.544c(1)'s

---

[2] GWCC alleges that the font size was larger than the statute required, but fails to explain how a larger print size would be harmful; GWCC only alleges that the font size does not comport with the statute.

[3] Defendant Lisa Posthumus Lyons, the Kent County Clerk responsible for finalizing referendum language, executed a stipulation in the trial court indicating she would remain a party to the case but not take a position on the merits.

type-size requirements did not apply to the petition. The trial court did not address substantial compliance under MCL 168.544d. GWCC appealed this order on September 26, 2023.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(9) is appropriate "if a defendant fails to plead a valid defense to a claim." *Capital Area Dist Library v Mich Open Carry, Inc*, 298 Mich App 220, 227; 826 NW2d 736 (2012). "[T]he trial court must accept as true all well-pleaded allegations and properly grants summary disposition where a defendant fails to plead a valid defense to a claim." *Id*. "Summary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id*.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *El-Khalil*, 504 Mich at 160. "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. Further, "[s]ummary disposition is proper under MCR 2.116(I)(2) if the court determines that the opposing party, rather than the moving party, is entitled to judgment as a matter of law." *Blackwell v Livonia*, 339 Mich App 495, 501; 984 NW2d 780 (2021) (quotation marks and citation omitted; alteration in original).

We also review issues of statutory interpretation de novo. *Tree Tops Props, LLC v Perkey*, 327 Mich App 244, 247; 933 NW2d 704 (2019). "When interpreting a statute, the primary rule of construction is to discern and give effect to the Legislature's intent, the most reliable indicator of which is the clear and unambiguous language of the statute." *Perkovic v Zurich Ins Co*, 500 Mich 44, 49; 893 NW2d 322 (2017). "We enforce such language as written, giving effect to every word, phrase, and clause." *Id*. "If a statute is unambiguous, judicial construction is neither required nor permitted, and the statute must be enforced as written." *Comerica, Inc v Dep't of Treasury*, 332 Mich App 155, 165; 955 NW2d 593 (2020). "A statute is not ambiguous merely because a term it contains is undefined." *Id*. "If a statute does not define a word, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word." *Id*. However, "[c]ourts should not abandon common sense when construing a statute." *Hmeidan v State Farm Mut Auto Ins Co*, 326 Mich App 467, 478; 928 NW2d 258 (2018) (quotation marks and citation omitted).

## III. ANALYSIS

GWCC argues that the trial court erred in determining the petition complied with all formal requirements applicable under Michigan election law. Specifically, GWCC argues that the trial court incorrectly interpreted the meaning of "below" in MCL 168.482(8)—and erroneously concluded that type-size requirements under MCL 168.482 and MCL 168.544c(1) did not apply—to find the petition in compliance with applicable requirements. Further, Alpine Township and the Clerk argue that MCL 168.482(7) and (8) do not apply to the petition, the trial court erred by

concluding otherwise, and the petition nevertheless substantially complied with all applicable requirements. See *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 713 n 3; 909 NW2d 890 (2017) (an appellee may argue alternate grounds to affirm a trial court's ruling without filing a cross-appeal).

The Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, provides that "[a] local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens . . . ." MCL 125.3201. Our Legislature provides a referendum mechanism for electors of a county or township to challenge zoning ordinances passed under MZEA. See MCL 125.3402. Under MCL 125.3402, a petitioner may file a notice of intent to file a petition with the municipal clerk to place a newly-enacted zoning ordinance on the ballot for voter approval or rejection. MCL 125.3402(1), (2), and (3). Once a notice is filed, the challenged ordinance

> shall not take effect until 1 of the following occurs:
>
> (a) The expiration of 30 days after publication of the ordinance, if a petition is not filed within that time.
>
> (b) If a petition is filed within 30 days after publication of the ordinance, the clerk of the legislative body determines that the petition is inadequate.
>
> (c) If a petition is filed within 30 days after publication of the ordinance, the clerk of the legislative body determines that the petition is adequate and the ordinance or part of the ordinance is approved by a majority of the registered electors residing in the zoning jurisdiction voting on the petition at the next regular election or at any special election called for that purpose. The legislative body shall provide the manner of submitting the zoning ordinance or part of the zoning ordinance to the electors for their approval or rejection and determining the result of the election. [MCL 125.3402(3).]

Accordingly, before a petition may be included as a referendum on the ballot, the municipal clerk must determine that the petition is "adequate." See MCL 125.3402(3)(b) and (c).

### A. APPLICABILITY OF MCL 168.482(7) AND (8)

MCL 125.3402(4) provides that "[a] petition and an election under this section are subject to the Michigan election law, 1954 PA 116, MCL 168.1 to 168.992." Chapter 22 of the Michigan Election Law, MCL 168.471 through MCL 168.488, entitled "Initiative and Referendum," governs petitions, including local ballot question initiatives and nominating petitions.

MCL 168.482 provides the size, form, and content requirements for petitions. However, only a portion of this statute is applicable to petitions to place a question on the ballot. MCL 168.488(2) states:

Section 482(1), (4), (5), and (6) apply to a petition to place a question on the ballot before the electorate of a political subdivision under a statute that refers to this section, and to the circulation and signing of the petition.

As relevant here, MCL 168.482(6) provides:

*Subject to subsections (7) and (8)*, the remainder of the petition form must be as provided following the warning to electors signing the petition in section544c(1). In addition, the petition must comply with the requirements of section 544c(2). [Emphasis added.]

MCL 168.482(7) and (8) provide:

(7) Each petition under this section must provide at the top of the page check boxes and statements printed in 12-point type to clearly indicate whether the circulator of the petition is a paid signature gatherer or a volunteer signature gatherer [ i.e., the circulator check box].

(8) Each petition under this section must clearly indicate *below* the statement required under subsection (7) and be printed in 12-point type that if the petition circulator does not comply with all of the requirements of this act for petition circulators, any signature obtained by that petition circulator on that petition is invalid and will not be counted [i.e., the circulator compliance statement]. [Emphasis added.]

Subsection (7) requires placement of the circulator check box at the top of the page. MCL 168.482(7). Subsection (8) requires placement of the circulator compliance statement "below" the circulator check box. MCL 168.482(8).

Here, the trial court held that petitions to place a question on the ballot must comply with both MCL 168.482(7) and (8), as required by the plain language of MCL 168.482(6) and MCL 168.488(2). The most reliable indicator of the Legislature's intent is the clear and unambiguous language of the statute. See *Perkovic*, 500 Mich at 49. Applying the plain language of MCL 168.488(2) and MCL 168.482(6), the two subsections include a double-nested cross-reference[4] to MCL 168.482(7) and (8). This double-nested cross-reference directs the reader, starting from MCL 168.488(2), to refer to and apply MCL 168.482(6), which in turn directs the reader to refer to and apply MCL 168.482(7) and (8). The directions in these two subsections are clear and are not subject to any other reasonable interpretation.

Further, although MCL 168.488(2) only expressly cites MCL 168.482(1), (4), (5), and (6), MCL 168.482(6) functions to expressly incorporate other statutory language, including MCL 168.482(7) and (8). And excluding the incorporation of subsections (7) and (8) would

---

[4] We use this term to describe, as explained in the main text, how MCL 168.488(2) incorporates these other statutory provisions through multiple, consecutive (i.e., double-nested) references in the statutory scheme.

improperly render this portion of MCL 168.482(6) nugatory. See *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495; 948 NW2d 452 (2019) ("an interpretation that would render any part of the statute surplusage or nugatory must be avoided"). We acknowledge that the Legislature could have amended MCL 168.488(2) directly to accomplish its goal, but the present statutory language is clear.

Lastly, although we agree with Alpine Township and the Clerk that the statutory scheme here expresses a legislative desire to regulate statewide referenda and petitions more heavily than local ones, this does not negate the Legislature's clearly-stated intent—via the previous cross-references—for MCL 168.482(7) and (8) to apply to petitions to place questions on the ballot. Accordingly, we agree with the trial court that MCL 168.488(2) and MCL 168.482(6) incorporate MCL 168.482(7) and (8) for such petitions.

## B. MEANING OF "BELOW" IN MCL 168.482(8)

After deciding that MCL 168.482(7) and (8) applied to the petition, the trial court determined the petition complied with MCL 168.482(8) because the circulator compliance statement was located across from and to the right of the circulator check box. In support of this holding, the trial court perceived that "below" as used in MCL 168.482(8) was a preposition. The trial court then looked to the dictionary definition of "below" when used as a preposition. This led the trial court to construe "below" to mean "inferior."

The trial court's focus only on the term's use as a preposition is at odds with the context of the term in the statute. Citing the preposition "below" in the Merriam-Webster Collegiate Dictionary, the trial court listed the following definitions: "(1) lower in place, rank, or value; (2) inferior to; and (3) not suitable to the rank of." See *Merriam-Webster Collegiate Dictionary* (11th ed). Notably excluded from the trial court's citation to the second definition, "inferior to," was the included phrase "as in rank." *Id*. Looking at each of these definitions, it is clear their context refers to social strata, hierarchical status, or quality. For example, a lieutenant is below, or inferior to, a captain in rank. Ultimately, focusing in on "inferior" as the definition of "below" cuts against a common-sense interpretation of the term as used in the statute to refer to the location of items on a document. See *Hmeidan*, 326 Mich App at 478; see also *McCormick v Carrier*, 487 Mich 180, 205; 795 NW2d 517 (2010) (stating that the Court of Appeals' dictionary-based interpretation of statutory terms improperly "gave the statute a labored interpretation inconsistent with common meanings and common sense").

In contrast, the same dictionary offers a definition of "below" much more relevant to the common meaning of this term, particularly in the context of looking at the position or location of items in relation to one another on a document. See *Feyz v Mercy Memorial Hosp*, 475 Mich 663, 684 n 62; 719 NW2d 1 (2006) ("[B]ecause a word can have many different meanings depending on the context in which it is used, and because dictionaries frequently contain multiple definitions of a given word, in light of this fact, it is important to determine the most pertinent definition of a word in light of its context."); *Wardell v Hincka*, 297 Mich App 127, 132; 822 NW2d 278 (2012) ("When consulting a dictionary, this Court should be cognizant of the context in which the term is used.")

In the dictionary definition of "below" as an adverb and an adjective, the following definition is provided: "lower on the same page or on a following page" and "written or discussed lower on the same page or on a following page." *Merriam-Webster Collegiate Dictionary*. These definitions, not the trial court's use of the term "inferior," are apt in the context of a written petition. This definition of "below" comports more soundly with the Legislature's intent when it drafted MCL 168.482(8).

By contrast, the trial court's interpretation of below is inconsistent with common meanings and common sense, especially considering the overall context of the statute governing the form and content of physical documents. See *McCormick*, 487 Mich at 205; *Feyz*, 475 Mich at 684 n 62; *Wardell*, 297 Mich App at 132. Applying the definitions "underneath" or "lower on the same page or on a following page," which are materially synonymous in the present context, the petition did not comply with the statutory requirements of MCL 168.482(8). The circulator compliance statement was placed to the right and across the page from the circulator check box. Placement across the document is not underneath or lower on the same page or on a following page. This placement does not comply with the requirement in MCL 168.482(8) that the circulator compliance statement be placed below the circulator check box.

C. SUBSTANTIAL COMPLIANCE

Alpine Township and the Clerk alternatively assert the petition only needed to substantially comply with the requirements of MCL 168.482. However, strict, rather than substantial, compliance with MCL 168.482(8) is usually necessary. See *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 600, 608; 822 NW2d 159 (2012) (opinion by MARY BETH KELLY, J.); *id*. at 620 (YOUNG, C.J., concurring in part and dissenting in part); *id*. at 637, 650 (MARKMAN, J., concurring in part and dissenting in part). Indeed, the Legislature's use of the word "must" in MCL 168.482(8) indicates mandatory action. See *Vyletel-Rivard v Rivard*, 286 Mich App 13, 25; 777 NW2d 722 (2009). Further, substantial compliance is not permitted here by MCL 168.544d, which states:

> Nominating petitions for the offices under this act and petitions for a local proposal may be circulated on a countywide form. *Petitions circulated countywide must be on a form prescribed by the secretary of state, which form must be substantially as provided in sections 482, 544a, or 544c, whichever is applicable.* The secretary of state may provide for a petition form larger than 8-1/2 inches by 13 inches and shall provide for identification of the city or township in which the person signing the petition is registered. The certificate of the circulator may be on the reverse side of the petition. This section does not prohibit the circulation of petitions on another form prescribed by this act. [Emphasis added.]

The plain language of this statute, which permits forms that "substantially" comply with the statutory requirements, only involves petitions circulated countywide. See also *Stand Up*, 492 Mich at 603 ("Because [the] plaintiff circulated its petition countywide, MCL 168.544d is

-8-

applicable.") The petition here was circulated townshipwide.[5] Therefore, MCL 168.544d is inapplicable to the petition in this case and strict compliance was required.

In the same opinion, however, our Supreme Court endorsed an exception to requiring strict compliance with election petition requirements for post-election challenges or cases. The Court specifically stated that "neither the statutory scheme nor the caselaw [the] plaintiff relies on supports the application of the substantial compliance doctrine *in the period before an election*." *Stand Up* 492 Mich at 608 (emphasis added); see also *id*. at 606-607 ("[W]hile this Court has recognized application of the substantial compliance doctrine to mandatory petition requirements *post*-election, it has not recently sanctioned application of substantial compliance to nonconforming petitions before an election.").

Citing two prior Michigan Supreme Court cases, the Court noted that "[i]t has long been held that post-election challenges substantially relax technical requirements on the grounds that any technical deficiencies are cured by the voters' affirmative approval of the underlying proposal." *Id*. at 606 n 33. The Court specifically relied on *Carman v Secretary of State*, 384 Mich 443, 454-455; 185 NW2d 1 (1971) (reasoning that the error in noncompliant initiatory petitions was cured by voters' adoption of the constitutional amendment because they were "directly notified" of the omitted information on election day), and *City of Jackson v Comm'r of Revenue*, 316 Mich 694, 716-718; 26 NW2d 569 (1947) (noting that courts should view technical errors differently once electors have voted affirmatively). *Stand Up*, 492 Mich at 606 n 33. In *City of Jackson*, 316 Mich at 701-704, both the case itself was filed and the alleged technical violation raised after voters approved the relevant constitutional amendment.

We note that in *Carman*, 384 Mich at 447-449, as in the instant case, both the case itself was filed and the alleged technical violation was raised *before* voters approved the relevant constitutional amendment, but there lacked time to make a ruling before the election. The Court held that the proposed amendment was erroneously submitted to voters because the initiatory petition was technically deficient "for want of specific compliance with the constitutional complement, § 482." *Id*. at 448-449. Yet the Court in *Carman* noted that "the amendment proposed—and now in question—was submitted to the electors . . . and approved by a strong majority," *Id*. at 447, and the Court thus cited approvingly to its earlier " 'election-cures-error' doctrine" in *Jackson*, reiterating that "courts should look at procedural errors of submission through different eyeglasses[] once the electors have voted affirmatively." *Id*. at 455. Accordingly, the Court ruled, in relevant part, that "after this particular affirmative vote of the electors was certified, the quoted requirement of § 482 became directory only"; the Court therefore vacated this Court's earlier opinion deeming the initiatory petition compliant, but did not disturb voters' approval of the amendment. *Id*. at 456-457.

---

[5] As it is written, MCL 168.544d appears to require petitions circulated townshipwide to strictly comply with statutory requirements whereas petitions circulated countywide require only substantial compliance. This is true even where, per the first sentence, the two may use the same petition form. Although we question the logic of affording a more forgiving standard when the petition's reach is wider, not narrower, the issue is one for the Legislature to address.

Notably, the *Stand Up* Court expressed in another footnote that "when a petition *is challenged* pre-election, the petition must actually comply with the statutory mandates . . . ." *Id*. at 608 n 37. Standing alone, and read literally, this language seemingly could preclude us from applying the substantial compliance doctrine here, inasmuch as GWCC initially challenged the petition in August 2023, before the election at issue. However, the posture of the case presented in *Stand Up* was such that both the challenge and the resolution occurred pre-election, and therefore the Court's use of the phrase "challenged pre-election" appears to have assumed a pre-election resolution. By contrast, this case is now in the period after the election and voters have affirmatively rejected the ordinance. Under these circumstances, we conclude that the reasoning of *Stand Up*, *City of Jackson*, and *Carman* support the application of substantial compliance. Specifically, while we conclude that the petition was technically deficient and generally needed to strictly comply with applicable requirements for the reasons already discussed, the petition's technical defect was cured when voters rejected the ordinance.

## D. REMAINING ISSUES

Because we employ substantial compliance, we need not address whether the petition was required to comply with the type-size requirements of MCL 168.544c(1). However, for purposes of providing clarity, we agree with the trial court that these requirements were inapplicable to the petition.

The relevant statutory language from MCL 168.482(6) that "the remainder of the petition form must be as provided following the warning to electors signing the petition in section 544c(1)" refers only to a *portion* of the language in MCL 168.544c(1). MLC 168.544c(1) sets forth the requirements for a nominating petition, which is distinct from a petition to place a question on a ballot like that here. See MCL 168.488(1) and (2). This distinction is particularly evident in the first paragraph of the MCL 168.544c(1), which expressly provides the type-size requirements for nominating petitions only. Given that the first paragraph of and the example "NOMINATING PETITION" listed in MCL 168.544c(1) expressly refers to nominating petitions, MCL 168.482(6)'s cross-reference to subsection 544c(1) is intended to only incorporate the portion of MCL 168.544c(1) that is expressly referred to in MCL 168.482(6) itself, i.e., that portion that "follow[s] the warning to electors signing the petition in section 544c(1). MCL 168.544c(1) includes an example warning to electors, after which there is additional exemplary language captioned "CERTIFICATE OF CIRCULATOR." Based on the plain language of MCL 168.482(6), it is only the latter section of MCL 168.544c(1) that applies here.

Further, all the sample language in subsection 544c(1) following the example warning is more generally written, and thus equally applicable, to both a nominating petition and a petition to place a question on the ballot. And MCL 168.482(5) already provides an example warning for petitions to place a question on the ballot different from the example for nominating petitions in MCL 168.544c(1). Thus, under GWCC's interpretation of these statutes, a petition to place a question on the ballot would have to include both the warning from MCL 168.482(5) and the warning from MCL 168.544c(1), as well as the example "NOMINATING PETITION" language, which plainly only applies to nominating petitions. For the foregoing reasons, we conclude the type-size requirements listed in the first paragraph of MCL 168.544c(1), before the example warning to electors, are inapplicable to petitions to place a question on a ballot.

Although we disagree with the statutory analysis employed by the trial court in denying GWCC's request for summary disposition, we nevertheless affirm granting summary disposition to defendants.[6] We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young

---

[6] "[A]n appellate court may uphold a lower tribunal's decision that reached the correct result, even if for an incorrect reason." *Klooster v City of Charlevoix*, 488 Mich 289, 310; 795 NW2d 578 (2011). Further, to the extent GWCC may attempt to use the result of this case to support nullification of the November 2023 voter referendum rejecting the ordinance, we note this Court has cited with approval the invocation of laches for legal challenges that affect elections due to the "profound harm to the public and to the integrity of the election process . . . ." *Davis v Secretary of State*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 362841), slip op at 8-9. Much like the failure in *Davis* to state affirmatively that a judicial candidate is running without a partisan designation, the placement of the circulator compliance box across from, rather than below the circulator check box, would seem to have "little practical import to electors," because the substantive content of the petition was not altered by this error and would not have affected voter decisions. *Davis*, slip op at 7 (citation omitted). At this juncture, however, we express no opinion as to the applicability of the doctrine of laches to the facts before us.